**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**



FILED

APR 1 5 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

AVINESH KUMAR, INDIVIDUALLY AND AS THE )
GUARDIAN OF THE ESTATE AND NEXT FRIEND OF )
C.K., A MINOR, JENNIFER CLODFELTER, )
INDIVIDUALLY AND AS NEXT FRIEND OF N.C., A )
MINOR, JOHN CLODFELTER, GLORIA )
CLODFELTER, JOSEPH CLODFELTER, SHARLA )
COSTELOW, INDIVIDUALLY AND AS THE NEXT )
FRIEND OF E.C. AND B.C., MINORS, GEORGE )
COSTELOW, DOROTHY COSTELOW, RONALD W. )
FRANCIS, SANDRA FRANCIS, DAVID FRANCIS, )
JAMES FRANCIS, SARAH GUANA ESQUIVEL, LOU )
GUNN, MONA GUNN, ANTON J. GUNN, JAMAL )
GUNN, JASON GUNN, NOVELLA WIGGINS, DIANE )
MCDANIELS, INDIVIDUALLY AND AS NEXT )
FRIEND OF J.M., A MINOR, FREDERICKA )
MCDANIELS-BESS, JESSE NIETO, JAMIE OWENS, )
INDIVIDUALLY AND AS THE GUARDIAN OF THE )
ESTATE AND NEXT FRIEND OF I.M.O., A MINOR, )
KENYON EMBRY, TERESA SMITH, HUGH M. )
PALMER, LEROY PARLETT, ETTA PARLETT, )
INDIVIDUALLY AND AS NEXT FRIEND OF H.P., )
A MINOR, KERA PARLETT MILLER, )
MATTHEW PARLETT, KATE BROWN, SEAN )
WALSH, KEVIN ROY, OLIVIA RUX, ROGELIO )
SANTIAGO, SIMEONA SANTIAGO, JACQUELINE )
SAUNDERS, INDIVIDUALLY AND AS THE )
GUARDIAN OF THE ESTATE AND NEXT FRIEND )
FOR J.T.S., A MINOR, ISLEY GAYLE SAUNDERS, )
GARY SWENCHONIS, SR., DEBORAH SWENCHONIS,)
SHALALA SWENCHONIS-WOOD, LORIE D. )
TRIPLETT, INDIVIDUALLY AND AS THE )
GUARDIAN OF THE ESTATE AND NEXT FRIEND OF )
A.T. AND S.R.T., MINORS, REED TRIPLETT, )
SAVANNAH TRIPLETT, FREDDIE TRIPLETT, )
THEODIS TRIPLETT, KEVIN TRIPLETT, WAYNE )
TRIPLETT, THOMAS WIBBERLY, PATRICIA A. )
WIBBERLY, TONI WIBBERLY, and TIMOTHY P. )
SCEVIOUR, AS PERSONAL REPRESENTATIVE OF )
THE ESTATES OF KENNETH EUGENE CLODFELTER,)
RICHARD COSTELOW, LAKEINA MONIQUE )
FRANCIS, TIMOTHY LEE GAUNA, CHERONE LOUIS )

Civil Action No.: 2:10cv 171

GUNN, JAMES RODERICK MCDANIELS, MARC IAN )
NIETO, RONALD SCOTT OWENS, LAKIBA NICOLE )
PALMER, JOSHUA LANGDON PARLETT, PATRICK )
HOWARD ROY, KEVIN SHAWN RUX, )
RONCHESTER MANANGA SANTIAGO, TIMOTHY )
LAMONT SAUNDERS, GARY GRAHAM )
SWENCHONIS, JR., ANDREW TRIPLETT, AND )
CRAIG BRYAN WIBBERLY, )
 )
             Plaintiffs, )
 )
v. )
 )
REPUBLIC OF SUDAN, )
 )
             Defendant. )

## COMPLAINT

PLAINTIFFS, by and through their undersigned counsel, bring this action against DEFENDANT REPUBLIC OF SUDAN, seeking non-economic damages arising out of the extrajudicial killing of the seventeen American sailors stationed on board the U.S.S. Cole on October 12, 2000. Plaintiffs, as persons who have claims under 20 U.S.C. § 1605A, seek judgment for damages against Defendant Republic of Sudan, which provided material support, in the form of funding, direction, training and cover to Al Qaeda, a worldwide terrorist organization whose operatives facilitated the planning and execution of the bombing of the U.S.S. Cole. In support of their Complaint, Plaintiffs allege that:

## JURISDICTION AND VENUE

1.      Jurisdiction over the subject matter of this case arises from the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A. Plaintiffs have complied with all conditions precedent to this action. All Plaintiffs, except Avinesh Kumar and Hugh M. Palmer, have previously offered to arbitrate this action pursuant to the international rules of arbitration.

Avinesh Kumar and Hugh M. Palmer have made an offer to arbitrate this action pursuant to the international rules of arbitration contemporaneously with the filing of this Complaint.

2.      This Court has subject matter and personal jurisdiction over Defendant. Venue is proper in this Judicial District. At the time of the incident complained of herein, the following Plaintiffs maintained their principal place of residence within this District:

> (a)    Olivia Rux
>
> (b)    Novella Wiggins
>
> (c)    Lorrie D. Triplett
>
> (d)    Sharla Costelow
>
> (e)    Jennifer Clodfelter

Further, the each of the Plaintiffs' decedents was stationed on board the U.S.S. Cole, which was permanently stationed in her home port in Norfolk, Virginia, located within the Eastern District of Virginia.

3.      Service of the Summons, Complaint, Notice of Suit and Offer to Arbitrate can be made upon Defendant Republic of Sudan by service on the Defendant's Ministry of Foreign Affairs, in care of the Embassy of the Republic of the Sudan located at 2210 Massachusetts Avenue NW, Washington, D.C. 20008 pursuant to 28 U.S.C. § 1608(a)(3).

## THE PARTIES

4.      Eight of the Plaintiffs herein are the surviving spouses or permanent companion of sailors wrongfully killed aboard the U.S.S. Cole. Twenty of the Plaintiffs are each a sibling of one of the sailors. Twenty-four of the Plaintiffs are parents of one of the sailors. Nine of the Plaintiffs, on whose behalf suit is brought by the next friend of each, are minor children of

sailors killed aboard the U.S.S. Cole. Each of the Plaintiffs' decedents was killed in an act of extrajudicial killing on October 12, 2000 while aboard the U.S.S. Cole, while berthed in a harbor in the waters of Yemen. The bombing of the U.S.S. Cole was an act of international terrorism as defined in 18 U.S.C. § 2331.

5.     Each of the Plaintiffs herein claims loss of either solatium or consortium as the result of the wrongful death of their decedent, as is appropriate depending on each Plaintiff's relationship to such decedent.

**KENNETH EUGENE CLODFELTER**

6.     Kenneth Eugene Clodfelter, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack against and the bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

       a. Jennifer Clodfelter is the widowed spouse of Kenneth Eugene Clodfelter.

       b. N.C. is the minor child of Kenneth Eugene Clodfelter.

       b. John and Gloria Clodfelter are the parents of Kenneth Eugene Clodfelter.

       d. Joseph Clodfelter is a sibling of Kenneth Eugene Clodfelter.

**RICHARD COSTELOW**

7.     Richard Costelow, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack against and the bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

       a. Sharla Costelow is the widowed spouse of Richard Costelow.

       b. E.C. and B.C. are the minor children of Richard Costelow.

       c. George and Dorothy Costelow are the parents of Richard Costelow.

**LAKEINA MONIQUE FRANCIS**

8.      Lakeina Monique Francis, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S S. Cole while berthed in a harbor in the waters of Yemen.

a. Ronald Francis and Sandra Francis are the parents of Lakeina Francis.

b. David Francis and James Francis is each a sibling of Lakeina Francis.

**TIMOTHY LEE GAUNA**

9.      Timothy Lee Gauna, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Sarah Gauna Esquivel is the mother of Timothy Lee Gauna.

**CHERONE LOUIS GUNN**

10.      Cherone Louis Gunn, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Lou Gunn and Mona Gunn are the parents of Cherone Gunn.

b. Anton J. Gunn, Jamal Gunn and Jason Gunn is each a sibling of Cherone Gunn.

**JAMES RODERICK McDANIELS**

11.      James Roderick McDaniels, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Novella Wiggins is the long-term companion of James Roderick McDaniels and mother of the minor child J.M.

b. J.M. is the minor child of James Roderick McDaniels.

c. Diane McDaniels is the mother of James Roderick McDaniels.

d. Frederica McDaniels-Bess is the sibling of James Roderick McDaniels.

## MARC IAN NIETO

12.     Marc Ian Nieto, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Jesse Nieto is the father of Marc Ian Nieto.

## RONALD SCOTT OWENS

13.     Ronald Scott Owens, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Jamie Owens is the widowed spouse of Ronald Scott Owens.

b. I.M.O. is the minor child of Ronald Scott Owens.

## LAKIBA NICOLE PALMER

14.     Lakiba Nicole Palmer, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Avinesh Kumar is the widowed spouse of Lakiba Nicole Palmer.

b. C.K. is the minor child of Lakiba Nicole Palmer.

c. Teresa Smith and Hugh M. Palmer are the parents of Lakiba Nicole Palmer.

d. Kenyon Embry is the sibling of Lakiba Palmer.

## JOSHUA LANGDON PARLETT

15.    Joshua Langdon Parlett, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Leroy Parlett and Etta Parlett are the parents of Joshua Langdon Parlett.

b. Kera Parlett Miller, H.P., and Matthew Parlett is each a sibling of Joshua Langdon Parlett.

## PATRICK HOWARD ROY

16.    Patrick Howard Roy, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Kate Brown is the mother of Patrick Howard Roy.

b. Sean Walsh and Kevin Roy is each a sibling of Patrick Howard Roy.

## KEVIN SHAWN RUX

17.    Kevin Shawn Rux, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Olivia Rux is the widowed spouse of Kevin Shawn Rux.

## RONCHESTER MANANGA SANTIAGO

18.    Ronchester Mananga Santiago, deceased, is an American citizen who died on

October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

    a. Rogelio and Simeona Santiago are the parents of Ronchester Mananga Santiago.

## TIMOTHY LAMONT SAUNDERS

19. Timothy Lamont Saunders, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

    a. Jacqueline Saunders is the widow of Timothy Lamont Saunders.

    b. Isley Gayle Saunders is the daughter of Timothy Lamont Saunders. J.T.S. is the minor child of Timothy Lamont Saunders.

## GARY GRAHAM SWENCHONIS, JR.

20. Gary Graham Swenchonis, Jr., deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

    a. Gary and Deborah Swenchonis are the parents of Gary Graham Swenchonis, Jr.

    b. Shalala Swenchonis-Wood is a sibling of Gary Graham Swenchonis, Jr.

## ANDREW TRIPLETT

21. Andrew Triplett, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

    a. Lorrie D. Triplett is the widowed spouse of Andrew Triplett.

b. A.T. and S.R.T. are the minor children of Andrew Triplett.

c. Reed and Savannah Triplett are the parents of Andrew Triplett.

d. Kevin, Wayne, Freddie and Theodis Triplett are the siblings of Andrew Triplett.

## CRAIG BRYAN WIBBERLY

22.     Craig Bryan Wibberly, deceased, is an American citizen who died on October 12, 2000, as a result of the wrongful attack and bombing of the U.S.S. Cole while berthed in a harbor in the waters of Yemen.

a. Thomas and Patricia Wibberly are the parents of Craig Bryan Wibberly.

b. Toni Wibberly is the sibling of Craig Bryan Wibberly.

23.     Defendant Republic of Sudan is a foreign state that, at all times material to this action, has been designated a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act, 50 U.S.C. § 2405(j). It was first designated a state sponsor of terrorism by U.S. Secretary of State Warren Christopher on August 12, 1993. It remained so designated at the time of the attack on the U.S.S. Cole and is still so designated. The Republic of Sudan has provided material support and resources to Al Qaeda, a worldwide paramilitary terrorist organization. The Republic of Sudan has sponsored Al Qaeda, within the meaning of 28 U.S.C. § 1605A, by providing it with funding, direction, training and cover for its terrorist activities worldwide.

## ALLEGATIONS OF LIABILITY AS TO ALL COUNTS

24.     The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for wrongful death.

25.     The acts of Defendant Republic of Sudan in knowingly and materially providing support to the perpetrators of the bombing of the U.S.S. Cole were and are acts of international terrorism under 18 U.S.C. §§ 2331 and 2333(a).

26.     The following facts were found by the Court in *Rux, et al. v. Republic of Sudan*, Case No. 2:04CV428. *See Rux v. Republic of Sudan*, 495 F.Supp.2d 541 (E.D.Va. 2007).

27.     At approximately 8:30 a.m. on October 12, 2000, the U.S.S. Cole ("Cole") entered the Port of Aden, Yemen, to temporarily stop for refueling.  At approximately 8:49 a.m., the Cole moored starboard side to a refueling station, near the mouth of the harbor.  The ship began refueling at approximately 10:31 a.m.  At approximately 11:10 a.m., one of the sailors standing watch over the refueling noticed a small boat heading "fast and hard" toward the Cole from the direction of the city.  The boat was manned by two males, both of whom appeared to be in their early thirties.  As they approached the Cole, the two men slowed the boat and maneuvered it parallel to the ship, coming down the port side headed aft.  Seconds later, the boat exploded.

28.     The blast ripped a thirty-two-foot by thirty-six-foot hole in the port side.  The main engine room, auxiliary machine room, and the dry provisions storeroom were flooded. Several chambers, including the Crew and Chief Petty Officer's Galley, were structurally destroyed.  The blast and its after-effects killed seventeen Navy sailors, all of them American citizens.  Forty-two others were injured, some of them sustaining serious burns to their faces, hands and arms, as well as lacerations and fractures.

29.     Plaintiffs are sixty-one surviving family members of the seventeen sailors who died.

30.     Many of the Plaintiffs learned of the attack the day it occurred from the television news, or from friends or relatives.  Some families were visited by military personnel at their homes and told that their loved ones were "presumed missing."  They waited anxiously, many of them for days, before being told that in fact their loved one had died.

31.     Each of the Plaintiffs suffered upon learning that their husband, son, daughter, or sibling had been murdered in a terrorist attack.

32.     It took several days for many of the decedents' bodies to be recovered and sent back to the families in the United States.  Some families held multiple funerals as additional body parts were recovered, identified, and sent home for burial.

33.     Years after the attack, the parents, wives, husbands, children, and siblings of the brave servicemen and women murdered on October 12, 2000, continue to suffer an unimaginable loss.  Many of the Plaintiffs experience depression, among other emotional and physical ailments that began in the aftermath of the attack.

34.     Sudan is a country of 41.2 million inhabitants.  It is located at the east end of the Sahara desert in northern Africa.  Sudan is bounded on the northeast by the Red Sea.  Directly across the Red Sea from Sudan is the Republic of Yemen, and the span between the two countries can be easily crossed by boat.

35.     Sudan's population is a majority Sunni Muslim, most of whom are in the north. The country has for years been ravaged by war and humanitarian crises, including an ongoing conflict that began in the mid-1980s between the Muslim government in the north and rebels in the rural south, which is populated largely by tribal and Christian groups.

36.     In 1989, General Omar Bashir assumed the presidency of Sudan in a military

coup that overthrew the elected government and converted Sudan into an Islamic Arab state. Bashir remains Sudan's President today. The coup was orchestrated by Hassan Abdallah Turabi, head of the Sudanese political party the National Islamic Front ("NIF") and leader of the Muslim Brotherhood. Turabi was the regime's de facto leader from 1989 until late 1999, when he was ousted and later put in jail. During the 1990s, Turabi and the NIF transformed Sudan into a centralized, radical Islamic state that openly supported movements and organizations with militant Islamic, anti-American, anti-Western ideologies.

37. Since 1993, the United States has continuously designated Sudan as a state sponsor of terrorism. 58 Fed. Reg. 52523-01 (Oct. 8, 1993).

38. Al Qaeda is a worldwide terrorist network led by Osama Bin Laden that has declared war against the United States and others who do not share its militant brand of Islam. Al Qaeda was founded by Bin Laden in Afghanistan in approximately 1990 to serve as a base for like-minded Sunni Islamic extremists.

39. During the Afghanistan war from 1979 to 1989, Bin Laden, the son of a wealthy Saudi construction magnate, organized and financed the recruitment and training of Arab nationals to fight alongside the Afghan mujahadin against the Soviet Union.

40. As is well known today, Al-Qaeda has organized, executed or inspired acts of terrorism around the world that killed or injured thousands of innocent people, including the September 11, 2001, attacks on the United States. Al Qaeda has supported terrorists in Afghanistan, Bosnia, Chechnya, Tajikistan, Somalia, Yemen, and Kosovo, and has trained terrorists from countries including the Philippines, Algeria, and Eritrea.

41. Following the Soviet withdrawal from Afghanistan in 1989, Bin Laden's group

was no longer welcome in Afghanistan. Bin Laden briefly returned to his home country of Saudi Arabia but was expelled in 1990 for his support of terrorism. At a time when Al Qaeda found itself without a territory from which it could base its terrorist operations, Turabi offered the organization refuge in Sudan.

42.     As stated by a 1996 U.S. Department of State report on Bin Laden, Bin Laden "relocated to Sudan in 1991, where he was welcomed by National Islamic Front (NIF) leader Hassan al-Turabi." Bin Laden lived in Sudan from 1991 until May 1996, when he was expelled from the country under international pressure. He then relocated to Afghanistan.

43.     Turabi and Bin Laden shared a common extremist ideological and religious outlook. Turabi, who was dean of the University of Khartoum law school in the 1960s, envisioned a pan-Islamic force consisting of both Shiites and Sunnis to counterbalance Western powers militarily, economically, and politically. As the de facto leader of the Sudanese regime, Turabi sought to impose *sharia*, or Islamic law, as the only source of law in Sudan, a goal shared by Al Qaeda. Bin Laden agreed to help Turabi in the regime's ongoing war against African Christian separatists in southern Sudan, and also to invest his wealth in the poor country's infrastructure.

44.     In exchange, Sudan provided Bin Laden's fledgling terrorist group with a sanctuary within which it could freely meet, organize, and train militants for operations. Bin Laden established several joint business ventures with the Sudanese regime that began to flourish upon his arrival in the Sudanese capital of Khartoum in 1991. Bin Laden formed symbiotic business relationships with wealthy NIF members by undertaking civil infrastructure development projects on the regime's behalf.

45.  Bin Laden's businesses in Sudan included:

(1) Al-Hijrah for Construction and Development, Ltd., which built the Tahaddi road between Khartoum and Port Sudan on the Red Sea coast, as well as a modern international airport near Port Sudan;

(2) An import-export firm, Wadi al-Aqiq Company, Ltd., which, in conjunction with Bin Laden's Taba Investment Company, Ltd., and with the cooperation of prominent NIF members, secured a near monopoly over Sudan's agricultural exports of gum, corn, sunflower, and sesame products; and

(3) Al-Themar al-Mubarak-ah Agriculture Company, Ltd., which acquired large tracts of land near Khartoum and in eastern Sudan.

These businesses provided income to Al Qaeda, as well as cover for the procurement of explosives, weapons, and technical equipment, and for the travel of Al Qaeda operatives. Bin Laden continued to maintain his substantial business interests and facilities in Sudan even after his departure to Afghanistan in 1996.

46.  Sudan allowed its banking institutions to be used by Al Qaeda to launder money. Bin Laden and wealthy members of the NIF capitalized Al-Shamal Islamic Bank in Khartoum; Bin Laden personally invested $50 million in the bank. In the late 1980s, Sudan adopted an Islamic banking system that forbids interest and lacks the rigorous accounting standards used by Western banking systems. The lack of scrutiny associated with this system was ideal for Al Qaeda because it allowed the group to move large sums of money in support of its operations without detection. As Mr. Farah, who is the author of "Blood From Stones: The Secret Financial Network of Terror," testified, Sudan "provided [Al Qaeda] fundamentally with a banking

structure, Islamic structure that's out of the norm of the banking rules that we're acquainted with in the west, and allowed them channels to move money through that would be virtually undiscoverable to the outside world." He added that Sudan "clearly had control over the banking system . . . . [Al Qaeda] couldn't have operated with that degree of freedom and openness if they had not been sanctioned by the central government to do so."

47.    In addition, as reported by the U.S. Department of State in its annual "Patterns of Global Terrorism" reports, the Sudanese military cooperated with Bin Laden and Al Qaeda to finance at least three terrorist training camps in northern Sudan by January 1994.

48.    Bin Laden's Al-Hijrah for Construction and Development company worked directly with Sudanese military officials to transport and provision the camps, where terrorists of Egyptian, Algerian, Tunisian, and Palestinian origin received training. From as early as 1997 to at least 1999, Sudan served as a "training hub" for Al Qaeda and other terrorist groups that used Sudan as a secure base for assisting compatriots elsewhere.

49.    Furthermore, starting as early as 1997 the Sudanese Government provided paramilitary training to terrorist organizations in Sudan.

50.    Starting in the early 1990s, Turabi and the Sudanese regime convened annual conferences in Sudan under the label Popular Arab and Islamic Conference. At these conferences, Bin Laden and other top leaders and operatives from the most violent Islamic terrorist organizations, including Bin Laden's Islamic Army Shura, the Palestinian Liberation Organization, Hamas, and Hezbollah, congregated to exchange information and plan terrorist activities. Turabi saw the conferences as a means of bringing together Sunnis and Shiites in the fight against the common enemy, i.e. the United States and other Western powers. Although the

conference was closed down in approximately 2000, Sudan "continued to be used as a safehaven" by Al Qaeda and other terrorist groups.

51.     As early as 1998, Sudan provided Al Qaeda members with Sudanese diplomatic passports as well as regular Sudanese travel documentation that facilitated the movement of Al Qaeda operatives in and out of Sudan. Diplomatic passports allow the holder to pass through airport security in airports and ports around the world without his bags being checked and without the same level of scrutiny or searches normally given to regular passport holders. A diplomatic passport typically lasts between five and ten years. Thus, these diplomatic passports issued in 1998 would not have expired prior to 2003. The use of diplomatic passports allowed Al Qaeda agents to enter and leave Sudan and cross borders in other countries with diplomatic pouches carrying secret materials to prepare for attacks without arousing suspicion.

52.     The Government of Sudan's provision of diplomatic passports to Al Qaeda, which was necessarily a government function carried out by government officers or agents, was critical to Al Qaeda's method of training its operatives in one country and then dispatching them with their materials to other countries to carry out operations or await instructions. By giving Al Qaeda diplomatic passports, as well as diplomatic pouches that could be carried without inspection, Sudan enabled Al Qaeda to transport weapons and munitions outside the country and into other countries undetected by customs agents.

53.     In addition, Sudan exempted Al Qaeda and its members from paying any taxes or import duties and permitted it to bring containers into the country without inspection by customs.

54.     Sudan's support of Al Qaeda continued even after Bin Laden's expulsion from the country in 1996 and lasted at least until the Cole bombing in October 2000. As reported in the

U.S. Department of State's annual "Patterns of Global Terrorism" reports, each year from 1997 through 2000 Sudan continued to serve as a meeting place, safe haven, and training hub for Al Qaeda and other terrorist groups including Lebanese Hizballah, Palestinian Islamic Jihad, Abu Nidal Organization, and Hamas. As of 1999, this support included "paramilitary training, money, religious indoctrination, travel, documents, safe passage, and refuge" and as of 2000 it "included the provision of travel documentation, safe passage, and refuge. Most of the groups maintained offices and other forms of representation in the capital, using Sudan primarily as a secure base for organizing terrorist operations and assisting compatriots elsewhere."

55.     The strike against the Cole was part of a decade-long plan conceived and executed by Bin Laden and Al Qaeda to attack U.S. interests in the Middle East, specifically American military forces. The Cole plot was an Al Qaeda operation supervised directly by Bin Laden. As stated in the 9/11 Commission Report, Bin Laden "chose the target and location of the attack, selected the suicide operatives, and provided the money needed to purchase explosives and equipment."

56.     The U.S.S. Cole attack's "mastermind" was Qaed Salim Sinan al-Harethi, also known as Ali Qaed Sinan Harthi, who was one of Bin Laden's bodyguards. Al-Harethi was trained by Al Qaeda *in Sudan* in the 1990s before being dispatched to Yemen where he became the chief of operations of Al Qaeda in Yemen.

57.     The explosives used in the Cole attack were sent by Al Qaeda operatives in Sudan. This finding is corroborated by the testimony of one of Bin Laden's lieutenants in Sudan, Jamal Al-Fadl, who testified in criminal proceedings against Bin Laden arising out of the 1998 embassy bombings.  Mr. Al-Fadl stated in sworn testimony in a trial before the United States

District Court for the Southern District of New York that he worked under Bin Laden in Sudan; that he stored four crates of weapons and explosives at a farm in Sudan owned by Bin Laden; and that he shipped the four crates in an Al Qaeda-owned boat from a facility owned by the Sudanese military in Port Sudan to Yemen, where they were to be used to "fight the Communists."

58.    Sudan, beginning in the early 1990s and continuing at least until 2000, actively provided Al Qaeda with the support, guidance, Sudanese diplomatic passports and resources that allowed it to transform into a sophisticated, worldwide terrorist network, and that such support was critical to Al Qaeda developing the expertise, networks, military training, munitions, and financial resources necessary to plan and carry out the attack that killed the seventeen American sailors on the Cole.

59.    Ayman Al-Zawahiri, a top-ranking member of Al Qaeda, reached an agreement in 1998 with Sudan's national Islamic groups to establish budgets to finance terror operations.

60.    Sudanese Foreign Minister Mustafa Osman Ismail admitted Sudan's role in supporting terrorism and Al Qaeda specifically on a C-SPAN broadcast on May 21, 2003.

61.    As a result of the support in facilities, as a safe haven, and of materials including radios, weapons and explosives by the Republic of Sudan to Al Qaeda, the Republic of Sudan caused Al Qaeda to be able to plan and execute its attack against an American naval vessel, and in particular the attack against the U.S.S. Cole, which lead to the deaths of the seventeen decedents named herein.  As a result, the Republic of Sudan is liable to Plaintiffs for their damages.

62.    Each of the Plaintiffs have suffered the loss of the love and emotional support,

affection, and companionship of the seventeen sailors named above for which they are entitled to damages consistent with their status as recognized by the law, applicable to this matter pursuant to 28 U.S.C. § 1605A.

## COUNT I – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## KENNETH CLODFELTER

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

63.    In 2000, decedent, Kenneth Clodfelter, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

64.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

65.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedent's rights.

66.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

67.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Kenneth Clodfelter's wrongful death.

68.    Decedent's death was not caused or contributed to by any negligence on

decedent's part, but was caused solely by the wrongful act, neglect, and default of Defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

69.     On October 12, 2000, the date of decedent's death, decedent left his wife Jennifer Clodfelter, 22 years of age, and minor child, N.C., 2 years of age, his parents, John Clodfelter and Gloria Clodfelter, and brother Joseph Clodfelter.

70.     By reason of decedent's wrongful death, decedent's spouse, child, parents, and brother have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

71.     The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Jennifer Clodfelter suffering loss of solatium and consortium and N.C., John Clodfelter, Gloria Clodfelter, and Joseph Clodfelter suffering loss of solatium.

72.     Jennifer Clodfelter has been damaged for loss of solatium and consortium and N.C., John Clodfelter, Gloria Clodfelter, and Joseph Clodfelter have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

73.     Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

74.     These actions by Defendant Republic of Sudan were taken deliberately and

recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

75.     The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Kenneth Clodfelter on board was killed in the attack.

76.     The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Jennifer Clodfelter, N.C., John Clodfelter, Gloria Clodfelter, and Joseph Clodfelter suffering severe mental anguish, emotional distress, and pain and suffering.

77.     As a proximate result, Jennifer Clodfelter, N.C., John Clodfelter, Gloria Clodfelter, and Joseph Clodfelter suffered extreme emotional damages through the loss of Kenneth Clodfelter.

### c. Punitive Damages

78.     Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Jennifer Clodfelter, N.C., John Clodfelter, Gloria Clodfelter, and Joseph Clodfelter for punitive damages for Kenneth Clodfelter's death, the proper amount of which shall be later determined by the Court.

## COUNT II – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A RICHARD COSTELOW

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

79.     In 2000, decedent, Richard Costelow, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders

directed it.

80.     On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

81.     The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedent's rights.

82.     The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

83.     The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Richard Costelow's wrongful death.

84.     Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of Defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

85.     On October 12, 2000, the date of decedent's death, decedent left his wife Sharla Costelow, 33 years of age, and two sons, B.C., 6 years of age, and E.C., 4 years of age, his parents, George Costelow and Dorothy Costelow.

86.     By reason of decedent's wrongful death, decedent's wife, sons, and parents have

been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

87.     The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Sharla Costelow suffering loss of solatium and consortium and B.C., E.C., George Costelow and Dorothy Costelow suffering loss of solatium.

88.     Sharla Costelow has been damaged for loss of solatium and consortium and B.C., E.C., George Costelow and Dorothy Costelow have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

89.     Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

90.     These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

91.     The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Richard Costelow on board was killed in the attack.

92.     The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Sharla Costelow, B.C., E.C., George Costelow, and Dorothy Costelow suffering severe mental anguish, emotional distress, and pain and suffering.

93.     As a proximate result, Sharla Costelow, B.C., E.C., George Costelow and

Dorothy Costelow suffered extreme emotional damages through the loss of Richard Costelow.

### c. Punitive Damages

94.     Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Sharla Costelow, B.C., E.C., George Costelow and Dorothy Costelow for punitive damages for Richard Costelow's death, the proper amount of which shall be later determined by the Court.

## COUNT III – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A LAKEINA FRANCIS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

95.     In 2000, decedent, Lakeina Francis, in the course of her service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

96.     On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

97.     The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

98.     The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously

liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

99.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Lakeina Francis's wrongful death.

100.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.   In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

101.    On October 12, 2000, the date of decedent's death, decedent left her parents, father Ronald Francis, 44 years of age, mother Sandra Francis, 41 years of age, and brothers David Francis and James Francis.

102.    By reason of decedent's wrongful death, decedent's parents and brothers have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

103.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Ronald Francis, Sandra Francis, David Francis and James Francis, suffering loss of solatium.

104.    Ronald Francis, Sandra Francis, David Francis and James Francis have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

105.    Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to

cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

106. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

107. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Lakeina Francis on board was killed in the attack.

108. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Ronald Francis, Sandra Francis, David Francis and James Francis suffering severe mental anguish, emotional distress, and pain and suffering.

109. As a proximate result, Ronald Francis, Sandra Francis, David Francis and James Francis suffered extreme emotional damages through the loss of Lakeina Francis.

### c. Punitive Damages

110. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Ronald Francis, Sandra Francis, David Francis and James Francis for punitive damages for Lakeina Francis's death, the proper amount of which shall be later determined by the Court.

## COUNT IV – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## TIMOTHY GAUNA

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

111. In 2000, decedent, Timothy Gauna, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders

directed it.

112.   On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by Al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

113.   The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

114.   The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

115.   The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Timothy Gauna's wrongful death.

116.   Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.   In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

117.   On October 12, 2000, the date of decedent's death, decedent left his mother, Sarah Gauna Esquivel, 38 years of age.

118.   By reason of decedent's wrongful death, decedent's mother has been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

119. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Sarah Gauna Esquivel suffering loss of solatium.

120. Sarah Gauna Esquivel has been damaged for loss of solatium as the result of the wrongful death of her decedent named herein.

### b. Pain and Suffering

121. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

122. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

123. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Timothy Gauna on board was killed in the attack.

124. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Sarah Gauna Esquivel suffering severe mental anguish, emotional distress, and pain and suffering.

125. As a proximate result, Sarah Gauna Esquivel suffered extreme emotional damages through the loss of Timothy Gauna.

### c. Punitive Damages

126. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities,

is also liable to Sarah Gauna Esquivel for punitive damages for Timothy Gauna's death, the proper amount of which shall be later determined by the Court.

## COUNT V – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A CHERONE GUNN

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

127. In 2000, decedent, Cherone Gunn, in the course of her service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

128. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

129. The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

130. The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

131. The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Cherone Gunn's wrongful death.

132. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its

agents and employees.   In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

133.   On October 12, 2000, the date of decedent's death, decedent left his parents, father Lou Gunn, 50 years of age, and mother Mona Gunn, 49 years of age, and brothers, Anton Gunn, Jamal Gunn, and Jason Gunn.

134.   By reason of decedent's wrongful death, decedent's parents and brothers have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

135.   The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Lou Gunn, Mona Gunn, Anton Gunn, Jamal Gunn, and Jason Gunn suffering loss of solatium.

136.   Lou Gunn, Mona Gunn, Anton Gunn, Jamal Gunn, and Jason Gunn have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

137.   Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

138.   These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

139.   The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place,

and that Cherone Gunn on board was killed in the attack.

140.   The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Lou Gunn, Mona Gunn, Anton Gunn, Jamal Gunn, and Jason Gunn suffering severe mental anguish, emotional distress, and pain and suffering.

141.   As a proximate result, Lou Gunn, Mona Gunn, Anton Gunn, Jamal Gunn, and Jason Gunn suffered extreme emotional damages through the loss of Cherone Gunn.

### c. Punitive Damages

142.   Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Lou Gunn, Mona Gunn, Anton Gunn, Jamal Gunn, and Jason Gunn for punitive damages for Cherone Gunn's death, the proper amount of which shall be later determined by the Court.

## COUNT VI – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## JAMES MCDANIELS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

143.   In 2000, decedent, James McDaniels, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

144.   On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in

the side of the vessel, killing the decedent.

145. The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

146. The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

147. The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for James McDaniels' wrongful death.

148. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

149. On October 12, 2000, the date of decedent's death, decedent left his permanent living companion Novella Wiggins, 19 years of age, to whom he was engaged to be married, J.M., his minor child, as yet unborn at that time, his mother, Diane McDaniels, and sister, Frederica McDaniels-Bess.

150. By reason of decedent's wrongful death, decedent's living companion, minor child, mother, and sister have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

151. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Novella Wiggins suffering loss of

solatium and consortium and J.M., Diane McDaniels, and Frederica McDaniels-Bess suffering loss of solatium.

152. Novella Wiggins has been damaged for loss of solatium and consortium and J.M., Diane McDaniels, and Frederica McDaniels-Bess have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

153. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

154. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

155. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that James McDaniels on board was killed in the attack.

156. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Novella Wiggins, J.M., Diane McDaniels, and Frederica McDaniels-Bess suffering severe mental anguish, emotional distress, and pain and suffering.

157. As a proximate result, Novella Wiggins, J.M., Diane McDaniels, and Frederica McDaniels-Bess suffered extreme emotional damages through the loss of James McDaniels.

### c. Punitive Damages

158. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities,

is also liable to Novella Wiggins, J.M., Diane McDaniels, and Frederica McDaniels-Bess for punitive damages for James McDaniels' death, the proper amount of which shall be later determined by the Court.

## COUNT VII – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A MARC NIETO

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

159.    In 2000, decedent, Marc Nieto, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

160.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan.  The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives.  The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

161.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

162.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

163.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Marc Nieto's wrongful death.

164.    Decedent's death was not caused or contributed to by any negligence on

decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

165.    On October 12, 2000, the date of decedent's death, decedent left his father Jesse Nieto, 56 years of age.

166.    By reason of decedent's wrongful death, decedent's father has been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

167.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Jesse Nieto suffering loss of solatium.

168.    Jesse Nieto has been damaged for loss of solatium as the result of the wrongful death of his decedent named herein.

### b. Pain and Suffering

169.    Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

170.    These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

171.    Jesse Nieto was aware that the bombing of the U.S.S. Cole had taken place, and that Marc Nieto on board was killed in the attack.

172.    The actions of Defendant Republic of Sudan did in fact cause the bombing and

subsequently was the cause in fact of Jesse Nieto suffering severe mental anguish, emotional distress, and pain and suffering.

173.    As a proximate result, Jesse Nieto suffered extreme emotional damages through the loss of Marc Nieto.

### c. Punitive Damages

174.    Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Jesse Nieto for punitive damages for Marc Nieto's death, the proper amount of which shall be later determined by the Court.

## COUNT VIII – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A RONALD OWENS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

175.    In 2000, decedent, Ronald Owens, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

176.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan.  The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives.  The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

177.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

178.   The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

179.   The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Ronald Owens' wrongful death.

180.   Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

181.   On October 12, 2000, the date of decedent's death, decedent left his wife Jaime Owens, 23 years of age, and daughter, I.M.O., 4 years of age.

182.   By reason of decedent's wrongful death, decedent's wife and minor child have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

183.   The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Jaime Owens suffering loss of solatium and consortium and I.M.O. suffering loss of solatium.

184.   Jaime Owens has been damaged for loss of solatium and consortium and I.M.O. has been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

185.    Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

186.    These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

187.    The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Ronald Owens on board was killed in the attack.

188.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Jaime Owens and I.M.O. suffering severe mental anguish, emotional distress, and pain and suffering.

189.    As a proximate result, Jaime Owens and I.M.O. suffered extreme emotional damages through the loss of Ronald Owens.

### c. Punitive Damages

190.    Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Jaime Owens and I.M.O. for punitive damages for Ronald Owens' death, the proper amount of which shall be later determined by the Court.

## COUNT IX – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## LAKIBA PALMER

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

191.    In 2000, decedent, Lakiba Palmer, in the course of her service in the United States

Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

192.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

193.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

194.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

195.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Lakiba Palmer's wrongful death.

196.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

197.    On October 12, 2000, the date of decedent's death, decedent left her husband Avinesh Kumar, minor child C.K., 1 years of age, mother Teresa Smith, 40 years of age, father Hugh M. Palmer, and brother, Kenyon Embry.

198. By reason of decedent's wrongful death, decedent's husband, minor child, parents, and brother have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

199. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Avinesh Kumar suffering loss of solatium and consortium and C.K., Teresa Smith, Hugh M. Palmer, and Kenyon Embry suffering loss of solatium.

200. Avinesh Kumar has been damaged for loss of solatium and consortium and C.K., Teresa Smith, Hugh M. Palmer, and Kenyon Embry have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### *b. Pain and Suffering*

201. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

202. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

203. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Lakiba Palmer on board was killed in the attack.

204. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Avinesh Kumar, C.K., Teresa Smith, Hugh M. Palmer, and Kenyon Embry suffering severe mental anguish, emotional distress, and pain and suffering.

{8331\00135012.2}

205. As a proximate result, Avinesh Kumar, C.K., Teresa Smith, Hugh M. Palmer, and Kenyon Embry suffered extreme emotional damages through the loss of Lakiba Palmer.

### c. Punitive Damages

206. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Avinesh Kumar, C.K., Teresa Smith, Hugh M. Palmer, and Kenyon Embry for punitive damages for Lakiba Palmer's death, the proper amount of which shall be later determined by the Court.

## COUNT X – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## JOSHUA PARLETT

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

207. In 2000, decedent, Joshua Parlett, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

208. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

209. The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

210. The Republic of Sudan provided material support, in the form of funding,

direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

211.   The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Joshua Parlett's wrongful death.

212.   Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.   In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

213.   On October 12, 2000, the date of decedent's death, decedent left his parents, father Leroy Parlett, 51 years of age, and mother Etta Parlett, 44 years of age, his siblings, Kera Parlett Miller, H.P. (a minor), and Matthew Parlett.

214.   By reason of decedent's wrongful death, decedent's parents and siblings have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

215.   The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Leroy Parlett, Etta Parlett, Kera Miller, H.P., and Matthew Parlett suffering loss of solatium.

216.   Leroy Parlett, Etta Parlett, Kera Parlett Miller, H.P., and Matthew Parlett have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

217. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

218. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

219. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Joshua Parlett on board was killed in the attack.

220. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Leroy Parlett, Etta Parlett, Kera Parlett Miller, H.P., and Matthew Parlett suffering severe mental anguish, emotional distress, and pain and suffering.

221. As a proximate result, Leroy Parlett, Etta Parlett, Kera Parlett Miller, H.P., and Matthew Parlett suffered extreme emotional damages through the loss of Joshua Parlett.

### c. Punitive Damages

222. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Leroy Parlett, Etta Parlett, Kera Parlett Miller, H.P., and Matthew Parlett for punitive damages for Joshua Parlett's death, the proper amount of which shall be later determined by the Court.

## COUNT XI – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## PATRICK ROY

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

223.    In 2000, decedent, Patrick Roy, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

224.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

225.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

226.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

227.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Patrick Roy's wrongful death.

228.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

229.    On October 12, 2000, the date of decedent's death, decedent left his mother, Kate Brown, 51 years of age, and brothers, Sean Walsh and Kevin Roy.

230.    By reason of decedent's wrongful death, decedent's mother and brothers have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

231.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Kate Brown, Sean Walsh, and Kevin Roy suffering loss of solatium.

232.    Kate Brown, Sean Walsh, and Kevin Roy have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

233.    Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

234.    These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

235.    Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Patrick Roy on board was killed in the attack.

236.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Kate Brown, Sean Walsh, and Kevin Roy suffering severe mental anguish, emotional distress, and pain and suffering.

237.    As a proximate result, Kate Brown, Sean Walsh, and Kevin Roy suffered extreme emotional damages through the loss of Patrick Roy.

### c. Punitive Damages

238.    Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Kate Brown, Sean Walsh, and Kevin Roy for punitive damages for Patrick Roy's death, the proper amount of which shall be later determined by the Court.

## COUNT XII – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## KEVIN RUX

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

239.    In 2000, decedent, Kevin Rux, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

240.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

241.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

242.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

243. The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Kevin Rux's wrongful death.

244. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

245. On October 12, 2000, the date of decedent's death, decedent left his wife, Olivia Rux, 34 years of age.

246. By reason of decedent's wrongful death, decedent's wife has been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

247. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Olivia Rux suffering loss of solatium and consortium.

248. Olivia Rux has been damaged for loss of solatium and consortium as the result of the wrongful death of her decedent named herein.

### b. Pain and Suffering

249. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

250. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and

pain and suffering on the family members of the deceased victims.

251. Olivia Rux was aware that the bombing of the U.S.S. Cole had taken place, and that Kevin Rux on board was killed in the attack.

252. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Olivia Rux suffering severe mental anguish, emotional distress, and pain and suffering.

253. As a proximate result, Olivia Rux suffered extreme emotional damages through the loss of Kevin Rux.

### c. Punitive Damages

254. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Olivia Rux for punitive damages for Kevin Rux's death, the proper amount of which shall be later determined by the Court.

## COUNT XIII – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A RONCHESTER SANTIAGO

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

255. In 2000, decedent, Ronchester Santiago, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

256. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by Al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into

the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

257. The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

258. The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

259. The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Ronchester Santiago's wrongful death.

260. Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

261. On October 12, 2000, the date of decedent's death, decedent left his father Rogelio Santiago, 55 years of age, and mother Simeona Santiago, 54 years of age.

262. By reason of decedent's wrongful death, decedent's parents have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

263. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Rogelio Santiago and Simeona Santiago suffering loss of solatium.

264. Rogelio Santiago and Simeona Santiago have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

265. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

266. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

267. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Ronchester Santiago on board was killed in the attack.

268. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Rogelio Santiago and Simeona Santiago suffering severe mental anguish, emotional distress, and pain and suffering.

269. As a proximate result, Rogelio Santiago and Simeona Santiago suffered extreme emotional damages through the loss of Ronchester Santiago.

### c. Punitive Damages

270. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Rogelio Santiago and Simeona Santiago for punitive damages for Ronchester Santiago's death, the proper amount of which shall be later determined by the Court.

## COUNT XIV – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## TIMOTHY SAUNDERS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

271.   In 2000, decedent, Timothy Saunders, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

272.   On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

273.   The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

274.   The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

275.   The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Timothy Saunders's wrongful death.

276.   Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees. In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### *a. Loss of Solatium and Consortium*

277. On October 12, 2000, the date of decedent's death, decedent left his wife, Jacqueline Saunders, 29 years of age, and two children, Isley Saunders, 10 years of age, and J.T.S., 7 years of age.

278. By reason of decedent's wrongful death, decedent's wife and daughter, and minor child, have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

279. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Jacqueline Saunders suffering loss of solatium and consortium and Isley Saunders and J.T.S. suffering loss of solatium.

280. Jacqueline Saunders has been damaged for loss of solatium and consortium and Isley Saunders and J.T.S. have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### *b. Pain and Suffering*

281. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

282. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

283. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Timothy Saunders on board was killed in the attack.

284. The actions of Defendant Republic of Sudan did in fact cause the bombing and

subsequently was the cause in fact of Jacqueline Saunders, Isley Saunders, and J.T.S. suffering severe mental anguish, emotional distress, and pain and suffering.

285. As a proximate result, Jacqueline Saunders, Isley Saunders, and J.T.S. have suffered extreme emotional damages through the loss of Timothy Saunders.

### c. Punitive Damages

286. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Jacqueline Saunders, Isley Saunders, and J.T.S. for punitive damages for Timothy Saunders's death, the proper amount of which shall be later determined by the Court.

## COUNT XV – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## GARY SWENCHONIS

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

287. In 2000, decedent, Gary Swenchonis, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

288. On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by Al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

289. The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

290.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

291.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Gary Swenchonis' wrongful death.

292.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

293.    On October 12, 2000, the date of decedent's death, decedent left his parents, father Gary Swenchonis, 46 years of age, and mother, Deborah Swenchonis, 45 years of age, and sister, Shalala Swenchonis-Wood.

294.    By reason of decedent's wrongful death, decedent's parents and sister have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

295.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Gary Swenchonis, Deborah Swenchonis, and Shalala Swenchonis-Wood suffering loss of solatium.

296.    Gary Swenchonis, Deborah Swenchonis, and Shalala Swenchonis-Wood have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

297.    Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

298.    These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

299.    The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Gary Swenchonis on board was killed in the attack.

300.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Gary Swenchonis, Deborah Swenchonis, and Shalala Swenchonis-Wood suffering severe mental anguish, emotional distress, and pain and suffering.

301.    As a proximate result, Gary Swenchonis, Deborah Swenchonis, and Shalala Swenchonis-Wood suffered extreme emotional damages through the loss of Gary Swenchonis.

### c. Punitive Damages

302.    Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Gary Swenchonis, Deborah Swenchonis, and Shalala Swenchonis-Wood for punitive damages for Gary Swenchonis' death, the proper amount of which shall be later determined by the Court.

## COUNT XVI – STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## ANDREW TRIPLETT

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

303.    In 2000, decedent, Andrew Triplett, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

304.    On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan.  The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives.  The resultant explosion tore a 40 foot hole in the side of the vessel, killing the decedent.

305.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

306.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

307.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Andrew Triplett's wrongful death.

308.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.  In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium and Consortium

309.    On October 12, 2000, the date of decedent's death, decedent left his wife, Lorrie Triplett, 32 years of age, two minor children, A.T., 8 years of age, and S.R.T., 4 years of age,

dependant brother, Freddie Triplett, 33 years of age, parents, Reed Triplett and Savannah Triplett, and brothers, Kevin Triplett, Wayne Triplett, and Theodis Triplett.

310.   By reason of decedent's wrongful death, decedent's wife, minor children, parents, and brothers have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

311.   The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Lorrie Triplett suffering loss of solatium and consortium and A.T., S.R.T., Freddie Triplett, Kevin Triplett, Wayne Triplett, and Theodis Triplett suffering loss of solatium.

312.   Lorrie Triplett has been damaged for loss of solatium and consortium and A.T., S.R.T., Freddie Triplett, Kevin Triplett, Wayne Triplett, and Theodis Triplett have been damaged for loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

313.   Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

314.   These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

315.   The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Andrew Triplett on board was killed in the attack.

316.   The actions of Defendant Republic of Sudan did in fact cause the bombing and

subsequently was the cause in fact of Lorrie Triplett, A.T., S.R.T., Freddie Triplett, Kevin Triplett, Wayne Triplett, and Theodis Triplett suffering severe mental anguish, emotional distress, and pain and suffering.

317.   As a proximate result, Lorrie Triplett, A.T., S.R.T., Freddie Triplett, Kevin Triplett, Wayne Triplett, and Theodis Triplett suffered extreme emotional damages through the loss of Andrew Triplett.

### c. Punitive Damages

318.   Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Lorrie Triplett, A.T., S.R.T., Freddie Triplett, Kevin Triplett, Wayne Triplett, and Theodis Triplett for punitive damages for Andrew Triplett's death, the proper amount of which shall be later determined by the Court.

## COUNT XVII - STATUTORY WRONGFUL DEATH ACTION UNDER 28 US.C. § 1605A
## CRAIG WIBBERLY

PLAINTIFFS reallege and incorporate herein by reference the allegations of paragraphs 1 through 62.

319.   In 2000, decedent, Craig Wibberly, in the course of his service in the United States Navy, was a crew member in service of the U.S.S. Cole wherever its missions and orders directed it.

320.   On October 12, 2000, during the course of the voyage, and while the vessel was in Aden Harbor, Yemen, decedent was murdered by al Qaeda operatives supported by the Defendant Republic of Sudan. The Al Qaeda operatives drove a boat laden with explosives into the side of the vessel and detonated the explosives. The resultant explosion tore a 40 foot hole in

the side of the vessel, killing the decedent.

321.    The murder of the decedent aboard the U.S.S. Cole on October 12, 2000, was intentional and malicious and in willful, wanton and reckless disregard of the decedents' rights.

322.    The Republic of Sudan provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities and are therefore vicariously liable for the actions of the Al Qaeda members, under 28 U.S.C. § 1605A.

323.    The acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. § 1605A for Craig Wibberly's wrongful death.

324.    Decedent's death was not caused or contributed to by any negligence on decedent's part, but was caused solely by the wrongful act, neglect, and default of defendant, its agents and employees.   In particular, decedent's death was caused solely by the Defendant Republic of Sudan's wrongful acts described specifically in this Complaint.

### a. Loss of Solatium

325.    On October 12, 2000, the date of decedent's death, decedent left his parents, father Thomas Wibberly, 52 years of age, and mother Patricia Wibberly, 49 years of age, and sister, Toni Wibberly.

326.    By reason of decedent's wrongful death, decedent's parents and sister have been deprived of decedent's love, affection, companionship, advice, comfort, support and services.

327.    The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of decedent's death and Thomas Wibberly, Patricia Wibberly, and Toni Wibberly suffering loss of solatium.

328.    Thomas Wibberly, Patricia Wibberly, and Toni Wibberly have been damaged for

loss of solatium as the result of the wrongful death of their decedent named herein.

### b. Pain and Suffering

329. Further, the actions of Defendant Republic of Sudan of providing material support leading to the bombing of the U.S.S. Cole constitute extreme and outrageous conduct intended to cause Plaintiffs mental anguish, emotional distress, and pain and suffering.

330. These actions by Defendant Republic of Sudan were taken deliberately and recklessly, with knowledge that they would cause severe mental anguish, emotional distress, and pain and suffering on the family members of the deceased victims.

331. The Plaintiffs were aware that the bombing of the U.S.S. Cole had taken place, and that Craig Wibberly on board was killed in the attack.

332. The actions of Defendant Republic of Sudan did in fact cause the bombing and subsequently was the cause in fact of Thomas Wibberly, Patricia Wibberly, and Toni Wibberly suffering severe mental anguish, emotional distress, and pain and suffering.

333. As a proximate result, Thomas Wibberly, Patricia Wibberly, and Toni Wibberly suffered extreme emotional damages through the loss of Craig Wibberly.

### c. Punitive Damages

334. Under 28 U.S.C. § 1605A(c), the Republic of Sudan, which provided material support, in the form of funding, direction, training and cover, for Al Qaeda's terrorist activities, is also liable to Thomas Wibberly, Patricia Wibberly, and Toni Wibberly for punitive damages for Craig Wibberly's death, the proper amount of which shall be later determined by the Court.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS respectfully request the following relief:

1.     Compensatory damages against Defendant Republic of Sudan for the wrongful deaths of the seventeen decedents;

2.     Punitive damages against Defendant Republic of Sudan in an appropriate amount to be determined at trial;

3.     Compensatory damages against Defendant Republic of Sudan for the mental anguish, emotional distress, and pain and suffering of the Plaintiffs;

4.     Compensatory damages for loss of consortium and solatium for each Plaintiff herein who was a spouse of a decedent named herein, for the following minimum amounts:

| | |
|---|---|
| Jennifer Clodfelter | $10,000,000.00, |
| Sharla Costelow | $10,000,000.00, |
| Jaime Owens | $10,000,000.00, |
| Olivia Rux | $10,000,000.00, |
| Jacqueline Saunders | $10,000,000.00, |
| Lorrie D. Triplett | $10,000,000.00. |

5.     Compensatory damages for loss of consortium and solatium for each Plaintiff herein who was a living companion of the decedent and parent of a minor child of a decedent named herein, for the following minimum amounts:

| | |
|---|---|
| Novella Wiggins | $10,000,000.00. |

6.     Compensatory damages for loss of solatium for each plaintiff herein who was a minor child of a decedent named herein, for the following minimum amounts:

| | |
|---|---|
| N.C. | $5,000,000.00, |
| B.C. | $5,000,000.00, |

| | |
|---|---|
| E.C. | $5,000,000.00, |
| C.K. | $5,000,000.00, |
| J.M. | $5,000,000.00, |
| I.M.O. | $5,000,000.00, |
| Isley Gayle Saunders | $5,000,000.00, |
| J.T.S. | $5,000,000.00, |
| A.T. | $5,000,000.00, |
| S.R.T. | $5,000,000.00. |

7.    Compensatory damages for loss of solatium for each plaintiff herein who was a parent of a decedent named herein, for the following minimum amounts:

| | |
|---|---|
| John Clodfelter | $5,000,000.00, |
| Gloria Clodfelter | $5,000,000.00, |
| George Costelow | $5,000,000.00, |
| Dorothy Costelow | $5,000,000.00, |
| Ronald Francis | $5,000,000.00, |
| Sandra Francis | $5,000,000.00, |
| Sarah Guana Esquivel | $5,000,000.00, |
| Lou Gunn | $5,000,000.00, |
| Mona Gunn | $5,000,000.00, |
| Diane McDaniels | $5,000,000.00, |
| Jesse Nieto | $5,000,000.00, |
| Teresa Smith | $5,000,000.00, |

| | |
|---|---|
| Leroy Parlett | $5,000,000.00, |
| Etta Parlett | $5,000,000.00, |
| Kate Brown | $5,000,000.00, |
| Rogelio Santiago | $5,000,000.00, |
| Simeona Santiago | $5,000,000.00, |
| Gary Swenchonis | $5,000,000.00, |
| Deborah Swenchonis | $5,000,000.00, |
| Reed Triplett | $5,000,000.00, |
| Savannah Triplett | $5,000,000.00, |
| Thomas Wibberly | $5,000,000.00, |
| Patricia Wibberly | $5,000,000.00. |

8.     Compensatory damages for loss of solatium for each plaintiff herein who was a sibling of a decedent named herein, for the following minimum amounts:

| | |
|---|---|
| Joseph Clodfelter | $2,500,000.00, |
| Kenyon Embry | $2,500,000.00, |
| David Francis | $2,500,000.00, |
| James Francis | $2,500,000.00, |
| Anton Gunn | $2,500,000.00, |
| Jamal Gunn | $2,500,000.00, |
| Jason Gunn | $2,500,000.00, |
| Frederica McDaniels-Bess | $2,500,000.00, |
| Kera Parlett Miller | $2,500,000.00, |

| | |
|---|---|
| Frederica McDaniels-Bess | $2,500,000.00, |
| Kera Parlett Miller | $2,500,000.00, |
| H.P. | $2,500,000.00, |
| Matthew Parlett | $2,500,000.00, |
| Sean Walsh | $2,500,000.00, |
| Kevin Roy | $2,500,000.00, |
| Shalala Swenchonis-Wood | $2,500,000.00, |
| Kevin Triplett | $2,500,000.00, |
| Wayne Triplett | $2,500,000.00, |
| Freddie Triplett | $2,500,000.00, |
| Theodis Triplett | $2,500,000.00, |
| Toni Wibberly | $2,500,000.00. |

9.     Costs of this suit, including reasonable attorney's fees set by the Court; and any further relief which the Court deems just and proper.

Respectfully submitted,

By: _____

MICHAEL F. FASANARO, JR. VA. BAR # 19756
Abrons, Fasanaro & Sceviour
999 Waterside Dr., Ste. 2415
Norfolk, Virginia 23510
Tel: (757) 640-1234
Fax: (757) 640-0202

**ANDREW C. HALL**
Florida Bar # 111480
2665 S. Bayshore Dr., PH 1
Miami, FL 33133
Tel: (305) 374-5030
Fax: (305) 374-5033

**JAMES COOPER-HILL**
Texas Bar # 04789300
320 Olympic
Rockport, Texas 78382
Tel: (361) 729-3923
Fax: (361) 727-0447

**NELSON M. JONES, III**
D.C. Bar # 320266
6161 Savoy, Suite 250
Houston, Texas 77036
Tel: (713) 659-7130
Fax: (713) 278-0490

Attorneys for Plaintiffs

{9870\00136143.1}                    64