IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**



FILED

SEP 19 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

AVINESH KUMAR, et al.
    Plaintiffs,

v.                                                      Civil Action No. 2:10cv171

THE REPUBLIC OF SUDAN,
    Defendant.


## OPINION AND ORDER

This case comes before the Court on motion by Plaintiffs Avinesh Kumar, *et al.*, (collectively, "Plaintiffs") for entry of default judgment. Plaintiffs seek the entry of a default judgment, pursuant to Federal Rule of Civil Procedure 55(b), against Defendant Republic of Sudan ("Sudan"). For the reasons stated herein, Plaintiff's Motion for Default Judgment is **DENIED** as to all of the Plaintiffs except for Plaintiffs Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean.

## I.    FACTUAL & PROCEDURAL BACKGROUND

*1.    The Cole Bombing[1]*

This action arises from the terrorist bombing of the American navy vessel U.S.S. Cole ("Cole") on October 12, 2000. At approximately 8:30 a.m. on October 12, 2000, the U.S.S. Cole

---

[1] The facts in this section are drawn nearly verbatim from the Court's prior decision in Rux v. Republic of Sudan, 495 F. Supp. 2d 541 (E.D. Va. 2007). Rux, in turn, relied heavily on a Navy investigation report, which describes the attack and its aftermath in extraordinary detail. See Rux v. Republic of Sudan, No. 2:04cv428,Ex.158, Investigation to Inquire Into the Actions of USS Cole (DDG 67) In Preparing For And Undertaking a Brief Stop For Fuel at Bandar at Tawahi (Aden Harbor) Aden, Yemen, On Or About 12 October 2000. The Court states these facts for purposes of background only.

1

entered the Port of Aden, Yemen, to temporarily stop for refueling.   Aden is a city of approximately 440,000 located in the Republic of Yemen.  The Port of Aden is a natural harbor with a deep draft in most areas and natural land protection on all sides.  Under a contractual agreement between the United States and Yemen, U.S. Navy vessels could obtain fuel at one of two fueling "dolphins" located near the mouth of the harbor without going to the pier.

The Cole, an Arleigh Burke Class Destroyer, was the twenty-fifth Navy ship to stop in Aden Harbor for refueling in nineteen months.  At the time, the ship had a crew of twenty-six officers and 270 enlisted personnel. The Cole had departed from its home port of Norfolk, Virginia, on August 8, 2000.  On October 9, 2000, the ship transited the Suez Canal and headed for Yemen.  At the time that the ship entered the Port of Aden on October 12, 2000, the U.S. Department of Defense terrorist threat level in Aden was "Threat Condition (THREATCON) BRAVO," which indicated an "increased and more predictable threat of terrorist activity."

At approximately 8:49 a.m., the Cole moored starboard side to Refueling Dolphin Seven, near the mouth of the harbor.  The ship began refueling at approximately 10:31 a.m.  At approximately 11:10 a.m., one of the sailors standing watch over the refueling noticed a small boat heading "fast and hard" toward the Cole from the direction of the city.  The boat, painted white with fire red trim, was about thirty-five feet long and six to seven feet wide and had a shallow V-hull.  It looked "brand new."  The boat was similar in size and shape to many other small vessels in the harbor, including the service craft that had been alongside the Cole.  The boat was manned by two males, both of whom appeared to be in their early thirties.  The two men slowed the boat as they approached the Cole, maneuvered it parallel to the ship and came down the port side headed aft.  As they did so, the two men in the boat were smiling, and waved to the crew.  Some crew members returned the greeting.  Seconds later, the boat exploded.

The explosion occurred between approximately 11:15 and 11:18 a.m., just as some of the crew was sitting down for lunch.  The blast ripped a thirty-two-by thirty-six-foot hole in the port side.  One sailor sleeping in his bed "was awakened by a loud explosion and thrown upward about three inches. I didn't know what happened, but I knew that anything that could throw me out of my rack had to be bad."  Smoke, dust, and fuel vapors filled the air.  The main engine room, auxiliary machine room, and the dry provisions storeroom were flooded.  Several chambers, including the Crew and Chief Petty Officer's Galley, were structurally destroyed.  The blast and its after-effects killed seventeen Navy sailors, all of them American citizens.  Forty-two others were injured, some of them sustaining serious burns to their faces, hands and arms, as well as lacerations and fractures.

> 2.   *Rux v. Republic of Sudan*

On July 16, 2004, fifty-nine surviving family members of the seventeen sailors killed in the attack on the Cole filed suit against Defendant Republic of Sudan ("Sudan").  These individuals, hereinafter referred to as the "Rux Plaintiffs," alleged that Sudan knowingly and willfully provided material support and resources to Osama Bin Laden and Al Qaeda, the perpetrators of the attack on the Cole.  See Complaint, Rux v. Republic of Sudan, No. 2:04cv428 (E.D. Va. filed July 16, 2004).

Sudan failed to defend the suit, and a default judgment was entered on February 16, 2005.  On June 17, 2005, Sudan entered an appearance and moved to vacate the entry of default.  The Court vacated the entry of default, and Sudan moved to dismiss the Rux Plaintiffs' action.  The Court denied Sudan's motion on August 26, 2005.[2]  Having failed to dismiss the Rux Plaintiffs'

---

[2]The Court denied Sudan's motion on all grounds except failure to state a claim upon which relief can be granted, which it took under advisement until Sudan was to file an Answer. Sudan unsuccessfully appealed the Court's order. See Rux v. Republic of Sudan, 461 F.3d 461 (4th Cir. 2006).

action, Sudan notified the Court that it would not participate any further in the proceeding. The Court twice ordered Sudan to file an answer or responsive pleading, but Sudan disregarded these orders. The clerk entered default against Sudan on February 2, 2007.

Pursuant to the Foreign Sovereign Immunity Act, 28 U.S.C. §1608(e) (2006), a plaintiff suing a foreign sovereign is required to establish his "claim or right to relief by evidence satisfactory to the court" before an order of default judgment. The Court set a bench trial for March 13, 2007 to allow the <u>Rux</u> Plaintiffs to submit evidence as required by §1608(e). On February 20, 2007, the <u>Rux</u> Plaintiffs filed a Fourth Amended Complaint. Paragraph 24 of the Fourth Amended Complaint asserted causes of action "under 28 U.S.C. § 1606 for wrongful death under the general maritime common law, or alternatively under the Death on the High Seas Act, 46 U.S.C. §§ 761 <i>et seq.</i>, and for the tort of intentional infliction of emotional distress under common law." (Fourth Am. Compl. ¶24).

The case was tried before this Court on March 13 and 14, 2007. At the conclusion of the trial, the Court concluded that there was sufficient evidence to enter default judgment against Sudan pursuant to 28 U.S.C. § 1608(e). On July 25, 2007, the Court issued an Opinion and Order detailing its factual findings and conclusions of law. <u>Rux v. Republic of Sudan</u>, 495 F. Supp. 2d 541 (E.D. Va. 2007). The Court found that Sudan had actively provided Al Qaeda with material support, that "such support was critical to Al Qaeda" in carrying out the attack on the Cole, and that "Sudan's material support to Al Qaeda led to the murders of the seventeen American servicemen and women on October 12, 2000, in the territorial waters of Yemen." <u>Id.</u> at 553–54.

The Court noted that

> [w]hile the FSIA vests jurisdiction in federal courts to hear cases against foreign states, it does not afford plaintiffs with a substantive cause of action. Thus, once a court determines that

4

> subject matter jurisdiction exists, it must determine what, if any,
> causes of action the plaintiff may bring against the defendant, and
> whether the foreign state is liable on any of those claims.

Id. at 553. Based on applicable precedent and statutory law, the Court found the Death on the

High Seas Act (DOHSA), 46 U.S.C. app. § 761 (2006) (current version at 46 U.S.C.A. § 30301

(2008)), to be the Rux Plaintiffs' exclusive cause of action. Id. at 558–65. The Court dismissed

the Rux Plaintiffs' remaining claims and awarded Plaintiffs judgment against Sudan in the total

amount of $7,956,344. These damages did not include recovery for non-pecuniary losses, which

are not compensable under DOHSA. Id. at 566–67. According to Counsel for the Rux Plaintiffs,

those among the Rux Plaintiffs who were awarded damages have since collected on their

judgments.

The Rux Plaintiffs filed an appeal in the Court of Appeals for the Fourth Circuit on

August 23, 2007, challenging the dismissal of their claims for intentional infliction of emotional

distress. While the case was pending on appeal, Congress passed the National Defense

Authorization Act (NDAA) for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3. Section

1083 of the NDAA creates a new cause of action against state sponsors of terrorism in 28

U.S.C.A. §1605A(c) (2008). The right of action in §1605A(c), unlike the right of action created

by DOHSA, allows recovery for "solatium, pain and suffering, and punitive damages." In light

of this statutory amendment, the Rux Plaintiffs moved for summary disposition of their appeal.

Additionally, the Rux Plaintiffs filed a motion in this Court on January 29, 2008, to reopen their

case and enter judgment under 28 U.S.C.A. §1605A (2008).

On July 14, 2009, the Court of Appeals remanded Rux to this Court for further

proceedings to "determine whether FSIA's creation of a private right of action for state-

sponsored terrorism takes precedent over DOHSA's remedy for death on the high seas when, as

here, terrorism-related deaths occurred on the high seas. Following that determination, the court

may, if warranted, reconsider its award of damages to Appellants." On August 24, 2009, the Rux Plaintiffs filed a Motion for Leave to Supplement the Fourth Amended Complaint. The Rux Plaintiffs asserted that "[t]hrough a 28 U.S.C. §1605A wrongful death cause of action, plaintiffs are permitted to assert claims of intentional infliction of emotional distress, loss of consortium, loss of solatium, and punitive damages. Plaintiffs were also expressly provided the right to assert these claims retroactively even after judgment has been entered in the case. See §1083(c)(2), Pub.L. 110-81." (Pls.' Mot. for Leave to Supplement the Fourth Am. Compl. 3).

The Court ordered Sudan to respond to the Rux Plaintiffs' Motion for Leave to Supplement the Fourth Amended Complaint by October 1, 2009. On September 30, 2009, Counsel for Sudan advised the Court that "Sudan objects to this Court's subject matter jurisdiction and has instructed us not to defend or otherwise participate in this proceeding on the merits."

On December 3, 2009, the Court issued an Opinion and Order denying the Rux Plaintiffs' Motion for Leave to Supplement the Fourth Amended Complaint. The Court noted that the Rux Plaintiffs had not relied on 28 U.S.C. §1605(a)(7) as "creating a cause of action," and were therefore ineligible to "refile" their case under §1083(c)(2) of the NDAA. The Court rejected the Rux Plaintiffs' argument that §1083(c)(2) was unconstitutional as applied to their case. On December 8, 2009, the Clerk's Office issued a Clerk's Judgment denying Plaintiffs' Motion for Leave to Supplement Their Fourth Amended Complaint, in accordance with the Court's Opinion & Order. The Rux Plaintiffs filed a Notice of Appeal on December 8, 2009.

On February 3, 2011, the Fourth Circuit dismissed as moot the Rux Plaintiffs' appealed claim related to § 1083(c)(2) of the NDAA and affirmed this Court's dismissal of the Rux Plaintiffs' state law claims. See Rux v. Sudan, No. 09-2359, 2011 WL 327275 (4th Cir. Feb. 3,

2011).  Plaintiffs commenced the present action in this Court while their appeal was still pending before the Fourth Circuit.

### 3.   The Present Action

On April 15, 2010, Plaintiffs filed the instant action in this Court.  Plaintiffs are sixty-one surviving relations of the seventeen sailors killed in the attack on the Cole.  Eight of the Plaintiffs are the surviving spouses or permanent companions of a deceased sailor, nineteen are siblings of a decedent, twenty-four are parents, and ten of the plaintiffs, on whose behalf suit is brought by the next friend of each, are minor children.[3]  Of the sixty-one Plaintiffs, fifty-nine were plaintiffs in <u>Rux v. Republic of Sudan</u>, 2:04cv428.  Two of the Plaintiffs, Avinesh Kumar and Hugh M. Palmer, were not parties to <u>Rux</u>.

The individual decedents are as follows:

1)  **Kenneth Eugene Clodfelter.**  Mr. Clodfelter, is survived by his wife, Plaintiff Jennifer Clodfelter; his minor child, Plaintiff N.C., his parents, Plaintiffs John and Gloria Clodfelter; and his younger brother, Plaintiff Joseph Clodfelter.

2)  **Richard Costelow.**  Mr. Costelow left behind his wife, Plaintiff Sharla Costelow; his parents, Plaintiffs George and Dorothy Costelow; and his two minor children, Plaintiffs E.C. and B.C.

3)  **Lakeina Monique Francis.**  Her survivors are her parents, Plaintiffs Ronald Wallace Francis and Sandra Annette Francis; and her younger brothers Plaintiffs David Francis and James Winston Francis, III.

4)  **Timothy Lee Gauna.**  He is survived by his mother, Plaintiff Sarah Gauna Esquivel.

5)  **Cherone Louis Gunn.**  Mr. Gunn left behind his parents, Plaintiffs Lou Gunn and Mona Gunn; and his three brothers, Plaintiffs Jason Gunn, Jamal Gunn, and Anton J. Gunn.

---

[3]Plaintiffs' Complaint erroneously states that nine of the Plaintiffs are minor children of the decedents and that twenty of the Plaintiffs are siblings of the decedents. (Compl. ¶4.) The actual numbers are eight and nineteen, respectively. (See Compl. ¶¶6–22.)

6) **James Rodrick McDaniels.** Mr. McDaniels is survived by his long-term companion, Plaintiff Novella Wiggins; his minor child, Plaintiff J.M.; his mother, Plaintiff Diane McDaniels; and his sister, Plaintiff Frederica McDaniels-Bess.

7) **Marc Ian Nieto.** Mr. Nieto is survived by his father, Plaintiff Jesse Leroy Nieto.

8) **Ronald Scott Owens.** Mr. Owens was survived by his wife, Plaintiff Jamie Owens, and his minor child, Plaintiff I.M.O.

9) **Lakiba Nicole Palmer.** Ms. Palmer was survived by her husband, Plaintiff Avinesh Kumar, her minor child, Plaintiff C.K.; her siblings, Plaintiff Kenyon Embry, Jack Earl Swenson, and Ollesha Smith Jean; and her parents, Plaintiffs Teresa Smith and Hugh M. Palmer.

10) **Joshua Langdon Parlett.** His survivors are his parents, Plaintiffs Leroy Parlett and Etta Parlett, and his siblings, Plaintiffs Kera Miller, Hannah Parlett, and Matthew Parlett.

11) **Patrick Howard Roy.** Mr. Roy was survived by his mother, Plaintiff Kate Brown, and his brothers, Plaintiffs Sean Walsh and Kevin Michael Roy.

12) **Kevin Shawn Rux.** Mr. Rux was survived by his wife, Plaintiff Olivia Rux.

13) **Ronchester Mananga Santiago.** Mr. Santiago was survived by his parents, Plaintiffs Rogelio Santiago and Simeona Santiago.

14) **Timothy Lamont Saunders.** Mr. Saunders was survived by his wife, Plaintiff Jacqueline Saunders, his daughter, Plaintiff Isley Gayle Saunders, and his minor child, Plaintiff J.T.S.

15) **Gary Graham Swenchonis.** Mr. Swenchonis left behind his parents, Plaintiffs Gary G. Swenchonis and Deborah Swenchonis, and his sister, Plaintiff Shalala Swenchonis-Wood.

16) **Andrew Triplett.** Mr. Triplett was survived by his wife, Plaintiff Lorrie D. Triplett; his two minor children, Plaintiffs A.T., and S.R.T.; his parents, Plaintiffs Reed Triplett and Savannah Triplett; and his siblings, Plaintiffs Kevin Triplett, Wayne Triplett, Freddie Triplett, and Theodis Triplett.

17) **Craig Brian Wibberly.** Mr. Wibberly was survived by his parents, Thomas Wibberly and Patricia Wibberly, and his sister, Toni Wibberly, all of them plaintiffs.

On October 7, 2010, Jack Earl Swenson and Ollesha Smith Jean, siblings of Lakiba Nicole Palmer, filed a civil complaint in this Court arising from the same facts. Swenson and Jean are represented by the same counsel representing Avinesh Kumar et al. As such, the Court consolidated the two matters by Order dated May 3, 2011.

Plaintiffs allege that the "acts of Defendant Republic of Sudan created civil liability on the part of Defendant Republic of Sudan under 28 U.S.C. §1605A for wrongful death." (Compl. ¶24.) Plaintiffs' factual allegations are purportedly drawn from this Court's opinion in Rux v. Republic of Sudan, 495 F. Supp. 2d 541 (E.D. Va. 2007). Plaintiffs allege, *inter alia*, that Sudan has been designated as a state sponsor of terrorism since 1993; that Sudan served "as a meeting place, safe haven, and training hub for Al Qaeda and other terrorist groups"; that the "mastermind" of the Cole attack was "trained by Al Qaeda in Sudan in the 1990s before being dispatched to Yemen"; and that Sudan's support "caused Al Qaeda to be able to plan and execute its attack against an American naval vessel, and in particular the attack against the U.S.S. Cole." (Compl. ¶¶27–61.)

Pursuant to 28 U.S.C. §1608(a)(3), Plaintiffs sent a copy of their Complaint, Summons, and Notice of Suit to Sudan's embassy on May 5, 2010. The U.S. Postal Service has confirmed that Sudan received these documents on May 7, 2010. To date, Sudan has not responded to Plaintiffs' Complaint or entered an appearance.

Plaintiffs filed a Request for Clerk's Entry of Default on July 27, 2010, though this request was stayed pending the Fourth Circuit's opinion in Rux.

## II.   STATUTORY BACKGROUND

The Foreign Sovereign Immunity Act (FSIA) of 1976, 28 U.S.C.A. §§ 1602–1611 (2008), is a statutory codification of the substantive law of sovereign immunity.[4]  FSIA reflects and expands upon the long-standing judicial practice of granting immunity to a foreign state for its public acts.  Specifically, § 1604 of the Act provides that "[s]ubject to existing international agreements . . . a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  Congress has enacted several exceptions to the grant of immunity in § 1604, including a "terrorism exception." 28 U.S.C.§ 1605(a)(7) (2006) (current version at 28 U.S.C. §1605A).

As originally enacted, nothing in FSIA created a new right of action against foreign governments.  Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China, 923 F.2d 957, 960 (2d Cir. 1991).  FSIA instead provided that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity . . ., the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 1606 (2006).  Under this "pass-through" provision, plaintiffs could bring suit against a foreign government based on substantive federal or state law, and then strip the foreign government of sovereign immunity through one of the exceptions listed in §§ 1605–1607.  See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 384 F. Supp. 2d 120, 132–34 (D.D.C. 2005) (state law of assault, battery, and IIED; terrorism exception to FSIA).

In 1996, Congress added a cause of action to FSIA by passing the "Flatow Amendment," Pub. L. No. 104-208, §589, 110 Stat. 3009 (1996), which modified § 1605(a)(7) of FSIA.  The

---

[4] See Republic of Austria v. Altman, 541U.S. 677, 695 (2004) (stating that FSIA is codification of standards governing foreign sovereign immunity as an aspect of substantive federal law); Dames & Moore v. Regan, 453 U.S. 654, 685 (1981) ("The principal purpose of the FSIA was to codify contemporary concepts concerning the scope of sovereign immunity and withdraw from the President the authority to make binding determinations of the sovereign immunity to be accorded foreign states.").

Flatow Amendment provided that "[a]n official, employee, or agent of a foreign state designated as a state sponsor of terrorism ... while acting within the scope of his or her office, employment, or agency shall be liable to a United States national . . . for personal injury or death caused by acts of that official, employee, or agent for which the court of the United States may maintain jurisdiction under section 1605(a)(7) . . . ." 28 U.S.C. § 1605(a)(7) note (repealed 2008).

The Flatow Amendment did not speak to the liability of a foreign government, but only to the liability of its officers or agents. Nonetheless, several district courts construed the Flatow Amendment to provide a private right of action against a foreign government.[5] In 2004, the D.C. Circuit rejected this interpretation in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024 (D.C. Cir. 2004). In Cicippio-Puleo, the D.C. Circuit held that the "Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself." Id. at 1033. For suits against foreign governments, the Cicippio-Puleo decision returned the law to a pre-Flatow-Amendment state, and forced plaintiffs to rely on state or federal laws other than FSIA to establish their causes of action.

In 2008, Congress sought to override the Cicippio-Puleo decision through an amendment to FSIA. Section 1083 of the National Defense Authorization Act (NDAA) for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, creates a private cause of action against foreign governments under FSIA. The NDAA amendment adds a new section, § 1605A, to FSIA. Section § 1605A(c) provides:

> Private right of action.—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), . . . shall be liable . . . for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for

---

[5] See, e.g., Cronin v. Islamic Republic of Iran, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) (holding that Flatow Amendment provides cause of action against foreign state).

money damages.   In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

Section § 1083(c) of the NDAA contains a detailed provision governing the application of § 1605A to pending cases.   In brief, § 1083(c) allows a plaintiff to file a motion giving §1605A retroactive effect in a pending case, but only if the four requirements of §1083(c)(2)(A) are met.   Stated in full, §1083(c)(2) provides:

> (2) Prior actions.—
> (A) In general.—With respect to any action that—
>> (i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of [FOEFRPA], before the date of the enactment of this Act,
>> (ii) relied upon either such provision as creating a cause of action,
>> (iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and
>> (iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure,
> that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.
> (B) Defenses waived.—The defenses of res judicata, collateral estoppel, and limitation period are waived—
>> (i) in any action with respect to which a motion is made under subparagraph (A), or
>> (ii) in any action that was originally brought, before the date of the enactment of this Act, under section 1605(a)(7) of title 28, United States Code, or section 589 of the [FOEFRPA], and is refiled under section 1605A(c) of title 28, United States Code, to the extent such defenses are based on the claim in the action.
> (C) Time limitations.—A motion may be made or an action may be refiled under subparagraph (A) only—
>> (i) If the original action was commenced not later than the latter of—
>>> (I) 10 years after April 24, 1996; or
>>> (II) 10 years after the cause of action arose; and

(ii) within the 60-day period beginning on the date of the
enactment of this Act [Jan. 28, 2008.

For plaintiffs who do not qualify for retroactive effect under § 1083(c)(2), but who had

previously filed actions under § 1605(a)(7), § 1083(c) allows the filing of a "related" suit under

§ 1605A. Subsection 1083(c)(3) provides as follows:

> (3) Related actions.—If an action arising out of an act or incident
> has been timely commenced under section 1605(a)(7) of title 28,
> United States Code, or section 589 of the Foreign Operations,
> Export Financing, and Related Programs Appropriations Act, 1997
> (as contained in section 101(c) of division A of Public Law 104-
> 208), any other action arising out of the same act or incident may
> be brought under section 1605A of title 28, United States Code
> [this section], if the action is commenced not later than the latter of
> 60 days after—
>> (A) the date of the entry of judgment in the original action;
>> or
>> (B) the date of the enactment of this Act [Jan. 28, 2008].

Section 1083(c)(2) contains a complicated waiver provision. It states as follows:

> (B) Defenses waived.—The defenses of res judicata, collateral
> estoppel, and limitation period are waived—
>> (i) in any action with respect to which a motion is made
>> under subparagraph (A), or
>> (ii) in any action that was originally brought, before the
>> date of the enactment of this Act [Jan. 28, 2008], under
>> section 1605(a)(7) of title 28, United States Code, or
>> section 589 of the Foreign Operations, Export Financing,
>> and Related Programs Appropriations Act, 1997 (as
>> contained in section 101(c) of division A of Public Law
>> 104-208), and is refiled under section 1605A(c) of title 28,
>> United States Code, to the extent such defenses are based
>> on the claim in the action.

## III.   LEGAL STANDARD

Pursuant to the Foreign Sovereign Immunities Act, a plaintiff bringing suit against a

foreign sovereign must establish a "claim or right to relief by evidence satisfactory to the court"

prior to any entry of "judgment by default." 28 U.S.C. § 1608(e); see also Roeder v. Islamic

Republic of Iran, 333 F.3d 228, 232 (D.C. Cir. 2003). In a default judgment proceeding, a

plaintiff may establish proof by affidavit.  <u>Campuzano v. Islamic Republic of Iran</u>, 281 F.Supp.2d 258, 268 (D.D.C. 2003).  Upon evaluation, the court may accept plaintiffs' uncontroverted evidence as true. <u>Beer v. Islamic Republic of Iran</u>, 574 F.Supp.2d 1, 9 (D.D.C. 2008) (citing <u>Heiser v. Islamic Republic of Iran</u>, 466 F.Supp.2d 229, 255 (D.D.C. 2006).

## IV.  ANALYSIS

A threshold question in this case is whether Plaintiff's action should be characterized as a "Related Action" under Subsection 1083(c)(3) of the NDAA, or as an entirely new action filed pursuant to 28 U.S.C. § 1605A.

*1.  As a Related Action, Plaintiffs' Claim is Barred by § 1083(c)(3)*

Section 1083(c)(3) provides as follows:

> (3) Related actions.—If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code [this section], if the action is commenced not later than the latter of 60 days after—
>> (A) the date of the entry of judgment in the original action; or
>> (B) the date of the enactment of this Act [Jan. 28, 2008].

Under § 1083(c)(3)'s unambiguous terms, Plaintiffs must demonstrate that they filed the instant action within "60 days after . . . the date of the entry of judgment" in <u>Rux v. Republic of Sudan</u>, 2:04cv428. Plaintiffs filed this action on April 15, 2010. To determine whether the filing of their Complaint satisfies § 1083(c)(3)'s requirements, the Court must first determine the date of "entry of judgment" in <u>Rux</u>.

The NDAA does not define the term "entry of judgment." In constructing this term, the Court "presumes that Congress intended the phrase to have the meaning generally accepted in

the legal community at the time of enactment."  <u>Dir., Office of Workers' Comp. Programs v. Greenwich Collieries</u>, 512 U.S. 267 (1994).  The phrase "entry of judgment" appears in both the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.  <u>See</u> Fed. R. Civ. P. 54(b); Fed. R. App. P. 4(a).  As defined in these Rules, "entry" occurs "when the essentials of a judgment or order are set forth in a written document separate from the court's opinion or memorandum and when the substance of this separate document is reflected in an appropriate notation on the docket sheet assigned to the action in the district court."  <u>Capterton v. Beatrice Pocahontas Coal Co.</u>, 585 F.2d 683, 688 (4th Cir. 1978).  "Judgment," in turn, includes "any order, such as one dismissing a case for lack of jurisdiction, from which an appeal lies."  <u>Id.</u> at 688 n.12.[6]

In <u>Rux</u>, the Court issued an Opinion and Order dismissing the case on December 3, 2009. The Clerk's Office entered a Clerk's Judgment on the docket on December 8, 2009.  Under the standard set forth in <u>Caperton</u>, therefore, entry of judgment occurred on December 8, 2009.

The Court's interpretation of "entry of judgment" creates an ambiguity in § 1083(c)(3). Under <u>Caperton</u>, a judgment is "any order, such as one dismissing a case for lack of jurisdiction, from which an appeal lies."  A court may issue several such orders over the course of a single case.  In <u>Rux</u>, for example, the Court entered judgment in favor of some of the <u>Rux</u> Plaintiffs on July 25, 2007.  The <u>Rux</u> Plaintiffs appealed, the case was remanded, and the Court entered judgment denying the <u>Rux</u> Plaintiffs permission to amend their complaint on December 8, 2009. Section 1083(c)(3) does not specify whether the sixty-day clock for commencing a related action begins to run with the first entry of judgment or the last entry of judgment.

_____

[6]The current version of Federal Rule of Civil Procedure 54 and Federal Rule of Appellate Procedure 4 contain a codified version of the Fourth Circuit's interpretation of the phrase "entry of judgment."

Fortunately, the Court need not resolve this question at this juncture because under either interpretation, Plaintiffs' Complaint falls outside the sixty-day window for a related action. Even assuming that the Court's entry of judgment on December 8, 2009 is the relevant date for the purposes of § 1083(c)(3), Plaintiffs' Complaint was not filed until April 15, 2010—128 days after the Court's entry of judgment in Rux.

Moreover, the Fourth Circuit has now affirmed this Court's judgment of December 8, 2009, foreclosing any possibility of further proceedings. This Court is not now called upon to resolve a thorny question of statutory interpretation the Fourth Circuit has affirmed the Court's opinion and left the Court's prior entry of judgment intact. Therefore, Plaintiffs cannot commence a related action pursuant to §1083(c)(3).

## 2.    The Rux Plaintiffs' Claims are Barred by Res Judicata

In the Fourth Circuit, the doctrine of *res judicata* bars a party from bringing a suit where: (i) there was a final judgment on the merits in a prior suit, (ii) both suits arise under the same "cause of action," and (iii) there is mutual privity of parties in both suits. Pueschel v. United States, 369 F.3d 345, 354–54 (4th Cir.2004); Katz v. Holland & Knight, No. 1:09cv1106, 2010 WL 114433 (E.D. Va. Jan. 8, 2010). To determine "whether the causes of action are identical for claim preclusion purposes," as the Fourth Circuit looks to "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir.1999) (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir.1986)). "Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 162 (4th Cir. 2008) (alteration in original) (quoting Tahoe Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003)).

16

In the present case, there is no question that there was a final judgment on the merits in Rux v. Republic of Sudan. The Rux Plaintiffs were parties to this prior action. There is also no question that the present case "arises out of the same transaction" as that at issue in Rux. Therefore, the application of *res judicata* hinges on whether the Rux Plaintiffs' current claims "could have been brought in the earlier action."

The closest case on point is In re Islamic Republic of Iran Terrorism Litigation, 659 F. Supp. 2d 31 (D.D.C. 2009). In that case, Chief Judge Lamberth declined to give *res judicata* effect to prior actions under §1605(a)(7), stating as follows:

> With respect to res judicata, that doctrine cannot be applied, where, as here, the claims now being asserted could not have been raised in the prior litigation. Prior to the enactment of the 2008 NDAA last year, § 1605A and the new federal cause of action it creates did not exist in any shape or form. As our Circuit has emphasized, res judicata "does not bar a litigant from doing in the present what he had no opportunity to do in the past." Drake v. F.A.A., 291 F.3d 59, 67 (D.C. Cir. 2002). Accordingly, res judicata, as a doctrine, does not afford preclusive effect to those cases presented here that were litigated in accordance with state law under § 1605(a)(7) at a time when no federal cause of action existed.

Id. (citations omitted).

First, the present case is distinguishable from In re Islamic Republic of Iran Terrorism Litigation in that the Rux Plaintiffs could have brought their § 1605A claims in Rux v. Republic of Sudan. In its prior Opinion and Order in Rux, the Court stated that "there is little question that at the time of the NDAA's enactment, [the Rux] Plaintiffs could have pursued a claim" under § 1605A by bringing a related action pursuant to § 1083(c)(3).[7] The Court reaffirms this portion

---

[7]As discussed previously, the Rux Plaintiffs instead sought to amend their Complaint as a "pending action" pursuant to §1083(c)(2). The Court denied leave to amend. As a general rule, *res judicata* bars claims that are advanced on an unsuccessful motion to amend. See Huck ex rel. Air Shuttle Corp. v. Dawson, 106 F.3d 45, 49 (5th Cir. 1997); Johnson v. SCA Disposal Servs., 931 F.2d 970, 975–76 (1st Cir. 1991).

of its holding today.  Under § 1083(c)(3)'s express terms, the <u>Rux</u> Plaintiffs were afforded an opportunity to bring claims pursuant to § 1605A.

Second, the Court does not find that Congress' enactment of the NDAA permits the <u>Rux</u> Plaintiffs to bring a second independent action based on the same terrorist incident.  As a general rule, changes in the law do not overcome the effects of *res judicata*.  Some courts have suggested that there is an exception to this rule when the change in the law involves the creation of a new statutory cause of action.  The Court views the weight of these precedents as doubtful, however, in light of the now-prevailing transactional approach to *res judicata*.

Even laying this point to the side, permitting the <u>Rux</u> Plaintiffs to bring a new cause of action in this case would violate the constitutional principles underpinning the Supreme Court's opinion in <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 241 (1995).   <u>Plaut</u> stands for the proposition that Congress may not deprive "judicial judgments of the conclusive effect that they had when they were announced."  <u>Id.</u> at 228.  The Court sees no relevant difference between ordering the courts to reopen final judgments, as in <u>Plaut</u>, and permitting plaintiffs to reopen prior judgments through the assertion of a newly-minted cause of action, as in the present case.

Fifty-nine of the Plaintiffs in this case not only obtained a substantial prior judgment in their favor, they also sought and obtained certification of said judgment from this Court.  Each Plaintiff thereafter collected the judgment in full from the Defendant.  Nonetheless, Plaintiffs now seek further remedies against the Defendant, via Congressional policy.  To be sure, Congress can alter the prospective effect of judicial rulings in a variety of ways, including by enacting legislation creating new causes of action.  But where, as here, the newly-enacted legislation is a deliberate effort to change the outcome in cases that have already been fully decided before an Article III tribunal, Congress transgresses the important limits imposed by our Constitution's separation of powers.

18

For the reasons stated herein, Plaintiff's Motion for Default Judgment is hereby **DENIED** as to all of the Plaintiffs except Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean. The Court DIRECTS entry of final judgment for the Defendant as to those fifty-nine Plaintiffs who have already appeared before this Court. The Court further **WITHHOLDS** ruling on Plaintiffs' Motion for Default Judgment as to Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean, which requires an evidentiary hearing. The Court **STAYS** this action for thirty days from the date of this entry of judgment as to Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean in order to provide the remaining fifty-nine Plaintiffs an opportunity to appeal this judgment. When said thirty day period has expired, counsel for the Plaintiffs Avinesh Kumar, Hugh M. Palmer, Jack Earl Swenson, and Ollesha Smith Jean shall immediately contact Lori Baxter, the Docket Clerk, to schedule a Rule 16 conference. The Clerk of Court is **DIRECTED** to transmit a copy of this Order to all counsel of record via United States mail.

**IT IS SO ORDERED**.

Norfolk, Virginia

Robert G. Doumar
Senior United States District Judge

September 19, 2011

19