```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
     AVINESH KUMAR, et al.,            )
 5                                     )
           Plaintiffs,                 )
 6                                     )      CIVIL CASE NO.
     v.                                )         2:10cv171
 7                                     )
     REPUBLIC OF SUDAN,                )
 8                                     )
           Defendant.                  )
 9   - - - - - - - - - - - - - - - - - -

10

11

12                    TRANSCRIPT OF PROCEEDINGS

13                       Norfolk, Virginia

14                      September 16, 2013

15

16

17   BEFORE:   THE HONORABLE ROBERT G. DOUMAR,
               United States District Judge
18

19

20

21

22   APPEARANCES:

23         BISCHOFF MARTINGAYLE, P.C.
           By:  Kevin E. Martingayle, Esquire
24              Counsel for the Plaintiffs

25
```

Heidi L. Jeffreys, Official Court Reporter

```
 1                (The hearing commenced at 12:45 p.m.)
 2          THE COURT:  Okay.  This is a scheduling conference.
 3          THE CLERK:  Yes, sir, it is.
 4          THE COURT:  And your name, sir?
 5          MR. MARTINGAYLE:  Good afternoon, Judge Doumar,
 6  Kevin Martingayle, local counsel --
 7          THE COURT:  Oh, I should have recognized you.
 8          MR. MARTINGAYLE:  Yes, sir.  I've gotten greyer
 9  since I was here last.  I get greyer every time I show up.
10          THE COURT:  The last time you were here,
11  Mr. Martingayle, we were arguing about the things that
12  happened at Virginia Beach at 1:00 in the morning.  And
13  they're still happening, I gather, aren't they?
14          THE CLERK:  On horseback, too.
15          Your Honor, this is Case No. 2:10cv110, Kumar,
16  et al. v. The Republic of Sudan.
17          THE COURT:  All right.  The reason why I wanted to
18  participate and therefore I wanted to tell you was that there
19  was a submission made in this case which indicated what every
20  participant had received monetarily speaking -- what the
21  government had paid each particular person, what benefits
22  they had all received -- because I was trying to figure out
23  what to give people at that time.
24          There's such a volume of documents, some of which
25  have -- we haven't been able to find that particular
```

```
 1   submission, and I'd like to get it, since it's already been
 2   submitted.  And I thought -- was it a Mr. Hall, the --
 3           MR. MARTINGAYLE:  Yes, sir.  Would you like me to
 4   use the podium?
 5           THE COURT:  Yes, would you?
 6           Mr. Hall -- and that's the only reason I'm here.
 7   Otherwise, the clerk would get all the dates, as you're well
 8   aware.
 9           And I want to get that particular matter; otherwise,
10   how can I determine who got what when, adding it all up?
11   Now, some weren't submitted because they may not have been
12   there, but I think every one of them was submitted.  And I
13   remember going through those individual sheets, and I just
14   don't want to -- I want to go back to them.  Somebody can
15   find them, and I thought you-all -- Mr. Hall would know where
16   they were.  He was --
17           MR. MARTINGAYLE:  Yes, sir.
18           THE COURT:  So if you could ask him about it maybe
19   we could reproduce them.  Because my indexing system doesn't
20   uncover them.  I've looked.  And we've got a volume of
21   documents, volumes of them.
22           MR. MARTINGAYLE:  Yes, sir.
23           THE COURT:  Other than that, then we'll come back
24   to -- this thing shouldn't be difficult.  It's just a
25   question of who gets what.  Isn't that about it?
```

1          MR. MARTINGAYLE:  Yes, sir, Your Honor.
2          And Mr. Hall intended to be here.  They had a
3   scheduling mistake in their own office.
4          THE COURT:  He doesn't have to be here.  I don't
5   care if he's here, but I do care to get those documents.
6          MR. MARTINGAYLE:  Well, he asked me to seek
7   clarification, if I got an opportunity to address Your Honor,
8   as to procedurally for purposes of a trial whether deposition
9   submissions would be received by the Court -- I believe
10  that's how it was done the first time around -- or whether
11  you anticipated receiving live testimony from the plaintiffs
12  in this case.  And it may depend somewhat on whether or not
13  anybody ever shows up on the other side of the case, but --
14         THE COURT:  Nobody is going to show up on the other
15  side of the case.
16         MR. MARTINGAYLE:  Probably not, yes, sir.
17         THE COURT:  If they did, we would be better off -- I
18  would be better off if somebody showed up.
19         MR. MARTINGAYLE:  Yes, sir.
20         THE COURT:  Because, as I read the statute, I'd then
21  have to make a determination that I wouldn't have to make if
22  somebody else showed up.
23         I think -- I hadn't thought about the trial itself.
24         MR. MARTINGAYLE:  Yes.  And I think his concern is
25  that if we schedule it using primarily documents and

1  depositions then it's a pretty short proceeding in this
2  Court; whereas, if you receive live testimony I think we're
3  talking about a lengthy proceeding.
4          THE COURT:  Well, right now let's indicate that it's
5  going to be live.
6          MR. MARTINGAYLE:  Live?  Yes, sir.
7          THE COURT:  Live.  Now, we could change that once I
8  start looking at where we're really going, because I have to
9  go back and look at what we're doing.
10         There are, as I recall, two people whose cases are
11 totally independent, correct?
12         MR. MARTINGAYLE:  I thought it was four, but it may
13 be two.
14         THE COURT:  It may be four.
15         MR. MARTINGAYLE:  Yes, sir.
16         THE COURT:  Okay.  For those four we're going to
17 have to have live testimony, under any circumstances.  We
18 know that.
19         It throws a strange wrinkle in the case because
20 there's been a holding of res judicata.  And that strikes me
21 as a little odd, because consequently we may have to have
22 some testimony.  I'm trying to -- I don't want to sit through
23 a trial again, but we may have to have a trial.
24         So, technically, we'll pretend that we are going to
25 have a trial.  We may cut that off later by saying these

```
 1   submissions are sufficient.  What makes this case so unusual
 2   are those four people.  I was thinking -- they are not four
 3   deaths, they are four people who are for two deceased
 4   individuals.  Is that correct, or am I wrong?
 5           MR. MARTINGAYLE:  I believe so, Judge.  I was -- I
 6   reread the opinion today to make sure that I could remember
 7   all the intricacies of it, and I didn't focus on that
 8   particular issue.
 9           THE COURT:  Neither did I, so there are two of us.
10           (There was a pause in the proceedings.)
11           MR. MARTINGAYLE:  It was definitely four -- they
12   called it in the opinion "four new plaintiffs."
13           THE COURT:  Four new plaintiffs?
14           MR. MARTINGAYLE:  But I don't believe of it was four
15   deaths.
16           THE COURT:  There were two deaths, I -- see,
17   that's -- there's no question we're going to have to come up
18   with findings in relation to them, so we'll plan on a new
19   trial.  We may as we look at each individual matter deal with
20   them as we come up, but tentatively let's look for a trial.
21           MR. MARTINGAYLE:  How much time does Your Honor
22   think we should set aside for that?
23           THE COURT:  Well, all these people want as much
24   money as they can get, and I can't blame them.  However, I'd
25   say ten days.  What do you think?  Because under any
```

```
 1   circumstances I'm going to have to hear from people.  Because
 2   what we're talking about is pain and suffering, isn't it?
 3           MR. MARTINGAYLE:  Yes, sir, unless you handled it
 4   sort of in the nature of victim impact statements or
 5   something like that.  But I --
 6           THE COURT:  I don't know how else I can handle it.
 7           MR. MARTINGAYLE:  That can be difficult.
 8           THE COURT:  Whatever happens, I have to hear from
 9   the people who say, "I want money for pain and suffering."
10   So who are you?  What is your relation?  What did you do?
11   Certainly, a wife is one thing.  A child may be another.
12   Third cousin once removed is another thing, if you understand
13   what I mean.
14           MR. MARTINGAYLE:  Yes, sir.
15           THE COURT:  I'm not about to give the third cousin
16   once removed much of anything, you know.
17           But, so, it will be a lot of -- you're a very
18   thorough fellow; you understand it.
19           MR. MARTINGAYLE:  Yes, sir.
20           THE COURT:  If you weren't so thorough I would say
21   you've been down this road so many times, Mr. Martingayle,
22   you won't have any problem developing it.
23           But the question really will be what is it and what
24   independent factors go into it, such as mail, letters, you
25   know, what they have, memorabilia.  I only point that out
```

```
 1   because I'm going to want as much independent factors in
 2   arriving at a conclusion other than, "Oh, I loved that
 3   fellow," you know, just so you get some idea of where I am.
 4   But you know I'm going to want something positive.
 5              MR. MARTINGAYLE:  Yes, sir.
 6              THE COURT:  Not, "I want money," is the question
 7   I -- I want to award those people -- it's not hard to figure
 8   out for somebody real close to someone.  It is hard when
 9   there are other factors.
10              MR. MARTINGAYLE:  Understood.
11              THE COURT:  "My brother was a wonderful guy."  So
12   was mine.  He died some years ago.  You know, you wonder.  I
13   said, well, I'd be hard pressed to say he had a lot of pain
14   and -- he died, you know?  If you understand what I'm talking
15   about.
16              MR. MARTINGAYLE:  Yes, sir.
17              THE COURT:  Okay.  And you can get together with
18   Ms. Baxter and get some dates.  But I'd suggest setting aside
19   at least ten days.  I think it will take that to hear all
20   these people, won't it?  Can you figure I could handle it
21   without hearing them?  How in the world could I handle it?
22              MR. MARTINGAYLE:  I will -- Your Honor, I'll confer
23   with Mr. Hall, and, in fact, I may get the transcript just so
24   he can be perfectly clear as to the discussion that we've had
25   here today.  And if we can come up with some other idea that
```

```
 1  can shorten it somewhat then we'll file a motion and see what
 2  we can do about arranging a hearing and tell you what our
 3  idea or plan is.
 4          THE COURT:  What I may do is when we get to it I may
 5  say, "We'll hear from these four people or ten people today,
 6  these ten people another day, these people another day, these
 7  people another day," so that everybody is not here, you know,
 8  just sitting.
 9          Do you see my point?
10          MR. MARTINGAYLE:  Yes, sir.
11          THE COURT:  But I think if I'm going to award money
12  for pain and suffering that I should hear the people, see the
13  people, you know, and have some real clear understanding of
14  it.  Otherwise, I'm not doing my job.
15          MR. MARTINGAYLE:  Perhaps one thing we could do is
16  try to develop a form for each person that at least gives you
17  some of the basic information that's purely factual; the
18  relationship, the age, how long they were together, or, if it
19  was a parent/child relationship, the nature of it, the pure
20  facts, and then have the testimony as to the damages.
21  Because that's really the more complicated portion of this.
22          THE COURT:  All right.
23          MR. MARTINGAYLE:  Whatever we can do to try to make
24  it more efficient and faster.
25          THE COURT:  That's up to you-all.
```

```
 1               MR. MARTINGAYLE:  Yes, sir.
 2               THE COURT:  It's such an unusual case.  It's really
 3   unusual when you get down to it.  There's been some unusual
 4   aspects of it.  It's called the never-ending case.
 5               MR. MARTINGAYLE:  Yes, sir.
 6               THE COURT:  Well, I look forward to it,
 7   Mr. Martingayle.
 8               MR. MARTINGAYLE:  Thank you, Judge.
 9               THE COURT:  I think we can come to something that
10   will speed the process.  I wish Mr. Hall were here.  He's a
11   very practical individual.
12               MR. MARTINGAYLE:  Yes, sir.  It's been a real
13   pleasure working with him.
14               THE COURT:  It's been an unusual --
15               MR. MARTINGAYLE:  It's been a real education for me.
16               THE COURT:  No, it's been a real education for him.
17               MR. MARTINGAYLE:  Thank you, Judge.
18               (The hearing adjourned at 12:59 p.m.)
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATION
 2
 3        I certify that the foregoing is a correct transcript
 4   from the record of proceedings in the above-entitled matter.
 5
 6                             s/s
 7                       Heidi L. Jeffreys
 8
 9                       October 24, 2013
10                             Date
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Heidi L. Jeffreys, Official Court Reporter